# Exhibit G

SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN NEW YORK CITY
-----------------------------------------------------------------X
In Re:     NEW YORK CITY                              Index No.  88/40,000
           ASBESTOS LITIGATION
-----------------------------------------------------------------X
This Document Relates To:

All New York County Asbestos Actions in
which Amchem Products, Inc. (individually
and as successor to Benjamin Foster) is
Named as a Defendant

-----------------------------------------------------------------X

**RESPONSES OF DEFENDANT SUED INCORRECTLY HEREIN AS
AMCHEM PRODUCTS, INC. (individually and as successor to BENJAMIN FOSTER)
TO PLAINTIFF'S FIRST STANDARD SET OF LIABILITY INTERROGATORIES
AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant sued incorrectly herein as Amchem Products, Inc. (individually and as

successor to Benjamin Foster) (hereinafter "Amchem")[1] responds to Plaintiff's First Set of

Standard Liability Interrogatories (the "Interrogatories") and Request for Production (the

"Requests") as follows:

<u>INTRODUCTION</u>

Since the Benjamin Foster Division of Amchem Products, Inc. produced all of the

Amchem Products, Inc.'s products which ever contained asbestos (with the sole exception of

TRE-HOLD, which has not been alleged as a product at issue in this lawsuit), these responses are

------------------------------------------------------------

[1] The current corporate successor of Amchem Products, Inc. is Bayer CropScience Inc.

limited to information regarding products sold prior to June 1, 1976, when H.B. Fuller Company acquired all assets of the Benjamin Foster Division. To the extent that Plaintiff's alleged exposure relates to Benjamin Foster products sold after June 1, 1976, Plaintiff should direct all discovery for such claims to H.B. Fuller Co.

### GENERAL OBJECTIONS

1.      Amchem objects generally to the requests as overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that they are unlimited in time and do not relate to the time period in which plaintiffs' alleged exposure to any product containing asbestos occurred.

2.      Amchem objects generally to the requests to the extent that they seek information protected by the attorney-client privilege, the protection afforded attorneys' work product or any other applicable privilege, protection or immunity from discovery.

3.      Amchem objects to the requests to the extent that they seek information concerning Amchem's subsidiaries or divisions (other than Benjamin Foster), parents or affiliates and predecessors or successors, which were not involved with Amchem's manufacture or sale of products which contained asbestos. Such information is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. To provide such information, Amchem could be required to seek and furnish information from, and to reply on behalf of, persons over whom or which Amchem no longer exercises or never exercised control. This would be unduly burdensome and oppressive and is not required by law.

---

(... cont'd)

[1] The current corporate successor of Amchem Products, Inc. is Bayer CropScience Inc.

4.    Since the Benjamin Foster Division of Amchem Products, Inc. produced all of the Amchem Products, Inc.'s products which ever contained asbestos, (with the sole exception of TRE-HOLD, which has not been alleged as a product at issue in this lawsuit) these responses are limited to information regarding Benjamin Foster products sold prior to June 1, 1976, when H.B. Fuller Company acquired all assets of the Benjamin Foster Division. Amchem objects to these requests to the extent that they seek information regarding Benjamin Foster products sold after June 1, 1976.

5.    Amchem objects to the requests to the extent that they seek information about Amchem's manufacturing plants or employees. Inasmuch as plaintiffs were neither employed by Amchem, nor worked at any of Amchem's facilities, requests seeking such information are irrelevant to this case and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Amchem objects to all inquiries regarding its TRE-HOLD product. Until late 1979, Amchem produced a tree sprout inhibitor used primarily for telephone poles, made from trees, called TRE-HOLD. TRE-HOLD contained a small quantity of asbestos encapsulated in asphalt carriers. Amchem excludes information concerning TRE-HOLD from its responses because such information is not relevant to this case nor reasonably calculated to lead to the discovery of admissible evidence. All other Amchem products which contained asbestos consisted of sealants, coatings, adhesives or mastics. Unless otherwise stated, Amchem's responses refer or relate only to those products.

7.    Since Amchem and its successors were or are corporations, Amchem lacks personal knowledge of the information supplied in these responses. Thus, the information

supplied in these responses is based on the knowledge of former employees of Amchem, and on information obtained from documents in Amchem's document repository.

8.   Amchem states that trial preparation and factual investigation are ongoing. Amchem's answers to these requests are based on information known to Amchem at this time. Amchem reserves the right, however, to make reference at the trial or at any hearing in this action to facts and documents not identified in these responses, the existence or relevance of which is later discovered by it or its counsel. By this reservation, Amchem does not in any way assume a continuing responsibility to update its responses to these requests, and specifically objects to each of these requests to the extent that they seek to impose any such continuing obligation upon Amchem, unless such obligation is imposed by law.

9.   Amchem objects to this set of requests in its entirety on the grounds that it is not reasonably framed in terms of the facts and subject matter of the present action, with the result that Amchem is called upon to speculate as to what information relevant to the present case, if any, may be deemed to fall within the scope of the requests as phrased.

10.   Amchem objects to this set of requests in its entirety on the grounds that the number of Interrogatories and subparts impose an excessive and improper burden on Amchem and are duplicative of each other.

### RESPONSES TO INTERROGATORIES

#### General Liability Interrogatories

Q1.   State the full name, address, telephone number and position of the corporate officer answering these interrogatories.

RESPONSE:  See Amchem's General Objections. Subject to its objections, Amchem responds as follows: Amchem's Benjamin Foster Division, which manufactured the Benjamin Foster products allegedly at issue in this case, was sold in 1976 and Amchem Products, Inc. has no

employees and no longer transacts business. Accordingly, Amchem's counsel prepared these responses on Amchem's behalf. Counsel has based its responses on information contained in available, relevant business records of Amchem's former Benjamin Foster Division and on information provided over time by former Amchem officials or employees. In particular, much information was provided by Wayne P. Ellis, now deceased, Amchem's former Director of Research. Irvin Steltz, a retired Benjamin Foster employee, has also verified and provided much of the information set forth therein. In addition, former employees, Robert Sage, Robert Cirrito, and Alan Slotkin, may have provided and verified information contained in the responses set forth herein. Mr. Steltz, Mr. Sage, Mr. Slotkin and Mr. Cirrito may be contacted through counsel for Amchem. Mr. Slotkin has signed these Interrogatories on behalf of Amchem.

Q2.  Have any documents and records of the defendant been used or referred to, in connection with the preparation of or answers to these interrogatories? If so, for each documents referred to, state the following:

a.  The number of the question and its subpart;

b.  The identity and title of the document;

c.  The name and location of the file in which the document was found;

d.  The name and location of the file in which the document is presently located;

e.  The originator of the document.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible evidence. Subject to its objections, Amchem answers as follows: Yes.

a.  Amchem's Benjamin Foster Division, which manufactured the products at issue in this case, was sold in 1976 and Amchem Products, Inc. has no employees and no longer

transacts business.  Accordingly, Amchem's counsel prepared these responses based on information contained in available, relevant business records.

      b.     See Amchem's answer to Interrogatory No. 2a., including all objections stated therein.

      c.     Amchem maintains a repository of documents it still has in its possession from its former Benjamin Foster Division or Company.  The repository is maintained at Mayer, Brown, Rowe & Maw, 190 S. LaSalle Street, Chicago, Illinois 60603-3441. Ms. Mary Martin, legal assistant, serves as custodian of the documents.  Upon plaintiff's request, Amchem will make its document repository (excluding privileged material) available for plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

      d.     See Amchem's response to Interrogatory No. 2c., including all objections stated therein.

      e.     See Amchem's response to Interrogatory No. 2c., including all objections stated therein.

Q3.    State the names of each person who was spoken to or who provided information to assist in answering these interrogatories and for each person state the following:

      a.     the number of each question and its subpart for which such personnel provided information;

      b.     for each question identified in a., state the name, title and position description of the personnel supplying information;

      c.     the present location and address of the personnel supplying information;

      d.     the contents of the information provided.

RESPONSE:  See Amchem's General Objections.  Amchem objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, harassing and not reasonably calculated to

lead to the discovery of admissible evidence. Subject to its objections, Amchem answers as follows: See Amchem's response to Interrogatory No. 1, including all objections set forth therein.

      a.    Amchem's Benjamin Foster Division, which manufactured the products at issue in this case, was sold in 1976 and Amchem Products, Inc. has no employees and no longer transacts business. Accordingly, Amchem's counsel prepared these responses on Amchem's behalf, in part based on information provided over time by former Amchem officials or employees.

      b.    Information was provided by Wayne P. Ellis, now deceased, who was Amchem's former Director of Research, and by Irvin Steltz, a retired Benjamin Foster employee. In addition, former employees, Robert Sage, Alan Slotkin and Robert Cirrito, may have provided information contained in the responses set forth herein and Alan Slotkin has verified these responses.

      c.    Former employees providing information to assist in answering these interrogatories may be contacted through Amchem's counsel.

      d.    The contents of any information provided by former Amchem personnel is reflected in the answers provided herein.

Q4.    Please state in which state or states of the United States or what foreign countries your business is incorporated and where its principal place of business is located.

RESPONSE: See Amchem's General Objections. Amchem also objects to this Interrogatory to the extent that it does not relate to the time period or location in which plaintiff's alleged exposure to any product containing asbestos occurred. Amchem further objects to this Interrogatory to the extent that it seeks information concerning Amchem's predecessors.

Subject to its objections, Amchem responds as follows:  Amchem's Benjamin Foster Division, which manufactured the products at issue in this case, was sold in 1976 and Amchem Products, Inc. has no employees and no longer transacts business.

Q5.    Please state whether:

    a.    Your company is authorized to do business in:

        (1)    New York

        (2)    New Jersey

        (3)    Connecticut

    b.    Your company does business in:

        (1)    New York

        (2)    New Jersey

        (3)    Connecticut

RESPONSE:  See Amchem's General Objections.  Subject to its objections, Amchem responds as follows:  Amchem's Benjamin Foster Division, which manufactured the products allegedly at issue in this case, was sold in 1976 and Amchem Products, Inc. has subsequently merged into another corporation and no longer transacts business.  Accordingly, Amchem is no longer authorized to do business in any particular state.

Q6.    State the full and complete legal name under which your company or any predecessor is now doing business and has done business at all times from the date when it began mining, processing, manufacturing and/or selling asbestos products or thermal insulation products and materials up until the present time.

RESPONSE:  See Amchem's General Objections.  Subject to its objections, Amchem answers as follows:  In 1914, Amchem Products, Inc. was incorporated in Delaware as the American Chemical and Paint Company.  In 1956, the American Chemical and Paint Company purchased the Benjamin Foster Company, which had manufactured certain products that contained asbestos, and the Benjamin Foster Company then became a wholly-owned subsidiary of the

American Chemical and Paint Company. The Benjamin Foster Company, in turn, had been incorporated in Delaware in 1923 after being initially founded as a proprietorship in 1909. In 1958, the American Chemical and Paint Company changed its name to Amchem Products, Inc. ("Amchem"). In 1968, Amchem changed its state of incorporation to Pennsylvania as a result of a transaction in which it became a wholly-owed subsidiary of Rorer-Amchem, Inc. Amchem maintained a principal place of business in Ambler, Pennsylvania. In 1969, the Benjamin Foster Company, then a subsidiary of Amchem, merged into and became a division of Amchem. With one exception not pertinent here, the Benjamin Foster Company, and later the Benjamin Foster Division, produced all of Amchem's asbestos-containing products. The exception was TRE-HOLD, a tree sprout inhibitor made by Amchem. Amchem sold the assets of the Benjamin Foster Division in 1976 to H.B. Fuller Company and then ceased to manufacture or sell asbestos-containing products except for TRE-HOLD.

In 1977, after divesting its Benjamin Foster Division, Amchem merged with another Pennsylvania corporation, UCAR Corporation. UCAR Corporation was at the time a subsidiary of Union Carbide Corporation ("Union Carbide"). UCAR was the surviving corporation in the merger, and changed its name to Amchem Products, Inc. In 1979, Amchem Products, Inc. changed its name to Union Carbide Agricultural Products Company, Inc. ("UCAPCO").[2] In 1986, Union Carbide sold the stock of UCAPCO to Rhone-Poulenc Inc. UCAPCO was renamed RP Ag Company and following several subsequent name changes and transactions, Amchem believes that the current corporate successor is now named Bayer CropScience, Inc. Bayer CropScience, Inc. is now an indirect subsidiary of Bayer AG.

---

[2]    In 1979, a new company, named Amchem Products, Inc., a Delaware corporation, was formed to carry on the metal finishing chemicals business previously operated by Amchem Products, Inc., the Pennsylvania

(cont'd)

Q7. Have you ever acquired, by way of a consolidation, merger, purchase of assets, or otherwise, any company which manufactured or sold any asbestos-containing products. If so, as to each such acquisition:

    a.    State the name and state of incorporation of the company which was acquired;

    b.    State the reasons for the acquisition;

    c.    State the date of the acquisition;

    d.    State the terms of the acquisition, including but not limited to the consideration paid (e.g., amount of stock, cash etc.) if any;

    e.    Identify all of the company's assets which were acquired (e.g., plants, machinery, stock in trade, trademarks, patents, goodwill, etc.);

    f.    Identify all of the company's liabilities which were assumed by you in the acquisition;

    g.    Identify each of the company's asbestos-containing product lines;

    h.    Identify each asbestos-containing product line of the acquired company which you continued to manufacture after the acquisition;

    i.    State the number of employees of the acquired company which were retained by you after the acquisition;

    j.    State the names of the directors, officers, and major stockholders of your company and the acquired company at the time of the acquisition and the names of the directors, officers, and major stockholders of your company and, if it continued to exist, of the acquired company, after the acquisition;

    k.    State the total number of shares of the acquired company which you held before and after the acquisition;

    l.    Identify and produce a copy of the agreement between you and the acquired company, the pertinent minutes of your Board of Directors and all other related documents.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, harassing and not reasonably calculated to

---

(... cont'd)

corporation. This "new" Amchem was subsequently sold to Henkel Corporation in 1980. UCAPCO continued the agricultural chemicals business of the "old" Amchem until the sale to Rhone-Poulenc in 1986.

lead to the discovery of admissible evidence. Subject to its objections, Amchem answers as follows: Yes. See Amchem's response to Interrogatory No. 6, including all objections set forth therein. Amchem purchased the Benjamin Foster Company, a Delaware corporation, in 1956. The terms of this transaction are reflected in the parties' agreement, a copy of which is maintained in Amchem's document repository and is available for Plaintiffs' inspection and copying. Amchem sold the assets of its Benjamin Foster Division in 1976 to H.B. Fuller Company. Thereafter, Amchem ceased to manufacture or sell all products which contained asbestos except for TRE-HOLD. In 1977, Amchem merged with another corporation and ceased to exist as a separate entity. Amchem Products, Inc. no longer transacts business or maintains any corporate office. Available records of the Benjamin Foster Division, the division which manufactured the products which may be at issue in this case and other documents that may be responsive to this Interrogatory, are maintained in a repository at the law offices of Mayer, Brown, Rowe & Maw, 190 S. LaSalle St., Chicago, Illinois 60603-3441. Upon Plaintiff's request, Amchem will make all of its records available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

Q8.    State the names and positions of all corporate officers or officials having the responsibility for creating, directing or setting the policy of your company with regard to the mining, manufacturing, processing, sale and/or packaging of asbestos products since 1930.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory as unduly burdensome, harassing, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to its objections, Amchem responds as follows: Amchem no longer exists as a separate entity and does not currently have any corporate officers. Amchem Products, Inc. sold the Benjamin Foster Division in 1976 to H.B. Fuller Company and

then ceased to manufacture or sell all products which contained asbestos except for TRE-HOLD. In 1977, Amchem merged with another corporation and ceased to exist as a separate entity. Documents are maintained in a repository at Mayer, Brown, Rowe & Maw, 190 S. LaSalle St., Chicago, Illinois 60603-3441, which may contain the identity of past corporate officers and that information is available to plaintiffs. Upon Plaintiff's request, Amchem will make its repository (excluding any privileged material) available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

Q9.     Have you or any of your predecessors or subsidiaries ever mined, processed, refined, sold or distributed asbestos or asbestos-containing products. If so, for each such product, complete an "Asbestos Product Information Sheet", Attachment #1.

RESPONSE: See Amchem's General Objections. Amchem further objects to the extent this Interrogatory requires speculation regarding the use of its products with other manufacturers' products which may have contained asbestos. Subject to its objections, Amchem responds as follows: Yes, in 1956, Amchem acquired the Benjamin Foster Company as a subsidiary, which had manufactured a line of products used as sealants, coatings, adhesives or mastics which Amchem then continued to develop, manufacture and sell. Some of these products, both before and after 1956, contained small amounts of encapsulated asbestos. According to Amchem's best available information, the only other product which contained asbestos ever made or sold by Amchem was TRE-HOLD, a tree sprout inhibitor used primarily in telephone poles, in which the asbestos fiber was also fully encapsulated. Amchem did not mine asbestos or sell raw asbestos fiber. Amchem never purchased asbestos-containing products which it relabeled or rebranded and never entered into relicensing agreements in the United States. Amchem also sold metal finishing chemicals and agricultural products. Documents are maintained in a repository at Mayer, Brown, Rowe & Maw, 190 S. LaSalle St., Chicago, Illinois 60603-3441, which may contain additional information responsive to this interrogatory. Upon Plaintiff's request,

Amchem will make its repository (excluding any privileged material) available for Plaintiff's

review and duplication, provided that an acceptable confidentiality order has been entered into,

at a mutually convenient time and date.

Q10.  If your company ever manufactured or sold any of the following types of asbestos
products, please identify each product and describe how it is cut, shaped, mixed and
applied on the job;

    a.    Asbestos cement mixes;

    b.    Asbestos pipe covering;

    c.    Asbestos-pipe covering;

    d.    Asbestos sheeting, boards or marinite;

    e.    Asbestos insulation used to protect against extremes of heat as well as cold;

    f.    Asbestos insulation in loose form which may be blown into homes or buildings;

    g.    Asbestos applied in spray form;

    h.    Asbestos tape, cloth, yarn, thread or tape;

    i.    Asbestos felt or blanket;

    j.    Asbestos paper;

    k.    Asbestos gaskets; giving particular reference as to whether or not the materials
have to be sawed or cut on the job, blown into confined areas, or mixed with
water into a cement or paste.

RESPONSE:  See Amchem's General Objections. Amchem objects to this Interrogatory as

unduly burdensome, harassing, overly broad and not reasonably calculated to lead to the

discovery of admissible evidence.    Amchem further objects to this Interrogatory as

incomprehensible as Amchem would have no knowledge as to when or how any one of its

products might be "used" on any jobsite after it was purchased or whether another entity

supplied an Amchem product to a jobsite after purchasing it. Amchem also objects to the extent

that Plaintiff has not specified time periods for particular work sites. Amchem further objects to

the extent this Interrogatory seeks information for job sites unrelated to Plaintiff's occupation for

the time period in question. Amchem also objects to this Interrogatory's request for information

concerning the distribution of Amchem products to entities located outside of the State of New York.

Subject to its objections, Amchem responds as follows: Amchem's products which contained asbestos were in liquid or semi-liquid form. These products consisted of adhesives, sealants, coatings and mastics, which were applied to consumers' products by brush, trowel or spray gun and did not require dry-mixing, cutting or sawing. The asbestos in Amchem's products which contained asbestos was encapsulated in the products' compounds by wet state mixing in the production process. Through this process, asbestos fibers were thoroughly and completely saturated with binder ingredients such as polymers, resins and plasticizer. Thus, asbestos fibers could not become airborne. Consequently, there was no danger of inhaling asbestos fiber or dust. The manner and use of Amchem's products is described in various product related documents maintained in the Amchem document repository. Amchem supplied application instructions for its products, copies of which are also available in the document repository, and responded to customer inquiries concerning application questions.

Q11. Please state if there is any way known to you that the products listed by you in Answers 9 and 10 can be used, applied or installed without the worker involving inhaling any asbestos dust or fibers.

RESPONSE:  See Amchem's General Objections. Amchem objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible evidence. Amchem further objects on the ground that in the absence of product identification by Plaintiff, this Interrogatory is premature and unduly burdensome.  Amchem also objects to this Interrogatory as unduly burdensome because Amchem over the years manufactured numerous different products which had many uses. Amchem further objects to this Interrogatory to the extent that it does not relate to the time period or locations in which Plaintiff was allegedly exposed to any product which contained

NYDOCS1-586844                                  14

asbestos. Amchem also objects to this Interrogatory's incorrect assumption that any Amchem product which contained asbestos created any health hazard. Subject to its objections, Amchem responds as follows: Amchem's products did not give off dust during application or normal use. The asbestos content in most of the Amchem products which contained asbestos did not exceed 5% by weight. In fact, the asbestos content in many of the products was much lower. In all products, the asbestos fibers were encapsulated by binder material compounds. As a result, neither the application or use of, nor any damage to the products which contained asbestos could cause asbestos fiber to be released from those products sufficient to cause a health hazard.

The encapsulation was achieved by wet-state mixing in the production process. Through this process, all asbestos fibers were thoroughly saturated or impregnated with binder ingredients such as asphalt, polymers, resins and plasticizer. Consequently, unencapsulated fiber did not exist within and therefore could not be released or emitted from any Amchem product under normal conditions sufficient to cause any health hazard. Thus, there was no danger of inhaling asbestos fibers or dust or other airborne material from using, installing or being exposed to any Benjamin Foster product. Indeed the United States Environmental Protection Agency has exempted products containing encapsulated asbestos, such as Amchem's products, "[t]hat are encapsulated with bituminous or resinous binder materials," from the prohibition against spraying products containing asbestos. See 43 Federal Register No. 118, pp. 26372-73 (June 19, 1978), 40 C.F.R. § 61-22(e)(3). OSHA likewise exempted such products from the requirement that warnings be placed on asbestos-containing products in 1972. See 37 Federal Register No. 110, pp. 11316-11322 (June 7, 1972). Amchem states that it conducted monitoring at its plants to the extent required by OSHA or any applicable state regulations.

Q12. Is it possible to distinguish the asbestos products listed by you in Answers 9 and 10 from those manufactured or distributed by a competitor?

NYDOCS1-686844.                                15

  a.  If so, please describe how you contend your product can be distinguished and identify each of your products by trade and generic name.

  b.  If there are products which, in your opinion, cannot be distinguished from products of a similar kind manufactured by a competitor, please state the name of each such similar product, who manufactured it, as well as the trade name of the product manufactured by your competitor.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Amchem also objects to this Interrogatory as irrelevant to the extent any asbestos contained within an Amchem product was encapsulated and, therefore, was not respirable and could not be responsible for any claim at issue here. Amchem further objects to this Interrogatory as overly broad to the extent that it seeks information on products which were not sold in New York. Subject to its objections, Amchem responds as follows: Amchem's available records do not indicate that it ever made any stamp or imprint on any of its products which contained asbestos. The products were sold in a liquid or semi-liquid, molten like state and, thus, it would not have been possible to make any imprint directly on these products. Depending on the product, Amchem's products were packaged in cartridges, pails or drums. Cartridges came in 11 or 28 fluid ounce sizes for sale to industrial users. Pails came in one, two, five or six gallon sizes. Packaging contained a label identifying the product, by brand, setting forth directions for the product's use and providing appropriate cautionary instructions. The label also contained the Amchem and Benjamin Foster designations. Available product labels and product-related documents are contained in the repository.

Q13. For each product listed by you in Answer 9 and 10, state whether the product could be used interchangeably with products of other manufacturers, distributors, or sellers, and if so, please identify such product or manufacturer.

RESPONSE: See Amchem's General Objections. Amchem further objects to this Interrogatory as vague, ambiguous and unclear, especially in so far that Plaintiffs do not define or limit the

meaning of the term "interchangeably." Amchem also objects to this Interrogatory as irrelevant to the extent any asbestos contained within an Amchem product was encapsulated and, therefore, was not respirable and could not be responsible for any claim at issue here. Subject to its objections, Amchem responds as follows: Amchem's products which contained asbestos were intended for use as adhesives, sealants, coatings and mastics in a variety of applications. The manner of use of Amchem's products is described in various product related documents contained in the Amchem repository. The repository also contains information about various competitive products. Amchem's available records do not provide further information responsive to this Interrogatory.

Q14. For each product listed by you in Answer 9 and 10, state the names and addresses of each New York customer who purchased the product and each New York job site to which the products were delivered by year, and complete a Worksite/Purchase Sales Information Sheet (Attachment II) for each purchaser or worksite.

RESPONSE: See Amchem's General Objections. Amchem objects to the extent that Plaintiff has not specified time periods for particular work sites. Amchem further objects to the extent this Interrogatory seeks information for job sites unrelated to Plaintiff's occupation for the time period in question. Subject to its objections, Amchem responds as follows: The burden of reviewing Amchem's business records for the answer to this Interrogatory is substantially the same for Plaintiff as for Amchem. Accordingly, upon Plaintiff's request, Amchem will make its sales records available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date. Amchem sales of products which contained asbestos (with the sole exception of TRE-HOLD, which is not relevant to this action) were made through the Benjamin Foster Division, which Amchem sold to the H. B. Fuller Company in 1976. The Benjamin Foster Division sales records that are still in Amchem's possession include sales by Amchem to end users and distributors; they do not

include a record of distributor sales. The remaining sales records still under Amchem's control are now in the custody of Amchem's counsel, Mayer, Brown, Rowe & Maw, 190 S. LaSalle St., Chicago, Illinois 60603-3441.

Q15.   For each asbestos product you manufactured or sold, state the total dollar, linear feet and/or number of pounds of the product:

a.     Sold in New York state;

b.     Sold in the United States.

RESPONSE:   a-b     See Amchem's General Objections. Amchem objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and harassing. Amchem also objects to the extent that Plaintiff has not specified time periods for particular work sites. Amchem further objects to the extent this Interrogatory seeks information for job sites unrelated to Plaintiff's occupation for the time period in question. Subject to its objections, Amchem responds as follows: Amchem sales of products which contained asbestos (with the sole exception of TRE-HOLD, which is not relevant to this action) were made through the Benjamin Foster Division, which Amchem sold to the H.B. Fuller Company in 1976. The Benjamin Foster Division sales records that are still in Amchem's possession include sales by Amchem to end users and distributors; they do not include a record of distributor sales. The remaining sales records still under Amchem's control are now in the custody of Amchem's counsel, Mayer, Brown, Rowe & Maw, 190 S. LaSalle St., Chicago, Illinois 60603-3441. The burden of reviewing Amchem's business records for additional information that may be responsive to this Interrogatory is substantially the same for Plaintiff as for Amchem. Accordingly, upon Plaintiff's request, Amchem will make its sales records available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

NYDOCS1-686844.                                    18

Q16.    Identify for the period from 1935 to 1980, each distributor, dealer, wholesaler and contractor who sold, distributed or used your asbestos-containing products in New York and within 75 miles radius of New York City.    For each such distributor, dealer, wholesaler and contractor, state:

    a.    The name, last known address and person who you did business with;

    b.    The years of your relationship with the distributor, dealer, wholesaler and contractor;

    c.    Whether there was a written agreement.  If so, identify it (or them) by date, title, signatories and present location;

    d.    Whether the relationship was exclusive, i.e., whether the distributor was not allowed to carry competing brands of some or all of the relevant products.  If exclusive as to any particular product, identify that product;

    e.    The annual volume in pounds and linear feet and dollar amount of each type of asbestos product sold;

    f.    The names and ultimate recipients of the asbestos products sold to or through each dealer, distributor, wholesaler, sales agent and contractor.

RESPONSE: See Amchem's General Objections.  Amchem objects to this Interrogatory's request for information concerning the distribution of Amchem products to entities located outside of the State of New York.  Subject to its objections, Amchem responds as follows:  See Amchem's response to Interrogatory No. 15, including all objections set forth therein.  The Benjamin Foster Division sales records that are still in Amchem's possession include sales by Amchem to end users and distributors; they do not include a record of distributor sales.  In 1977, Amchem merged with another corporation and ceased to exist as a separate entity.  Amchem's available records may have information as to when particular products may have been discontinued.  This information is accessible to plaintiffs through reviewing Amchem's available documents. Upon Plaintiff's request, Amchem will make its available sales records available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

Q17.   Identify each of your sales personnel responsible from 1935 to 1980 for sales of asbestos products in New York City and within 75 mile radius of New York City. For each such person, state the years of such employment, his job title, the last known address and whether he is still your employee.

RESPONSE:  See Amchem's General Objections. Subject to its objections, Amchem responds as follows: Amchem sold its Benjamin Foster Division in 1976 to H.B. Fuller Company. In 1977, Amchem merged with another corporation and ceased to exist as a separate entity. Amchem's available documents identify names of various persons who would have been involved, if at all, in sales. Amchem's available records to the extent they reference employees our contained in the repository.  Upon Plaintiff's request, Amchem will make its repository (excluding any privileged material) available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date. Amchem's available records do not contain sufficient information to completely answer this Interrogatory, but the burden of reviewing the information in the repository is no greater for Plaintiffs than it is for Amchem.

Q18.   Did you at any time manufacture asbestos-containing products which were sold to another manufacturer for resale by that company under its own name? If so:

   a.    Identify each manufacturer to whom such sales were made and the date of such sales;

   b.    Identify the product or products involved in each such agreement;

   c.    If such sales were made pursuant to an agreement, identify the dates that each such agreement was in effect and product a copy of the agreement.

RESPONSE:  See Amchem's General Objections. Subject to its objections, Amchem responds as follows: No. Amchem's available records indicate that the Benjamin Foster Company or Division was the sole producer, manufacturer or designer of all of Amchem's products that contained asbestos, with the exception of TRE-HOLD.  Amchem's available records do not

indicate that a purchaser ever re-sold a Benjamin Foster product under a different trade name or label. Additional documents referencing distributors are contained in the Amchem repository.

Q19.   Did you ever purchase any asbestos or any asbestos-containing products of any other manufacturer for distribution or sale under your name or trademark? If so:

    a.    Identify each manufacturer from whom products were purchased;

    b.    Identify the name of each product purchased;

    c.    Identify the dates of each such purchase and distribution;

    d.    Produce a copy of each purchase agreement.

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem responds as follows: No. Amchem never purchased products which contained asbestos which it re-sold under any label and never entered into any such labeling, relabeling or licensing agreement. See Amchem's response to Interrogatory No. 18, including all objections stated therein.

Q20.   Did you ever enter into distribution or licensing agreements with any manufacturer of asbestos-containing products? If so:

    a.    Identify each manufacturer with whom such agreement was entered into;

    b.    State the dates, products and geographical areas involved;

    c.    Produce a copy or each such agreement.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory as unduly burdensome, harassing, overly broad and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it seeks information regarding non-related companies or their products. Additionally, Amchem objects to this Interrogatory to the extent that it seeks information that is equally as accessible to Plaintiff as it is to Amchem. Amchem further objects to this Interrogatory's request for information concerning the distribution of Amchem products to entities located outside of the State of New York. Subject to its objections, Amchem responds as follows: No. Amchem's available records indicate that the Benjamin

Foster Company or Division was the sole producer, manufacturer or designer of all of Amchem's products that contained asbestos, with the exception of TRE-HOLD. According to Amchem's available records, Amchem never purchased products which contained asbestos which it re-sold under any label and never entered into any such labeling, relabeling or licensing agreement.

Q21. For the period 1928 to the present, state the address of each miner, manufacturer, or processor of asbestos or asbestos fibers used your products and for each such miner, manufacturer or processor state:

  a.    The date, amounts and delivery point for each shipment of asbestos you received;

  b.    The products in which the asbestos was used.

RESPONSE:    See Amchem's General Objections. Amchem objects to this Interrogatory as unduly burdensome, harassing, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Amchem further objects to this Interrogatory's request for information concerning the distribution of Amchem products to entities located outside of the State of New York. Subject to its objections, Amchem responds as follows: Amchem did not mine asbestos or sell raw asbestos fiber. The principal suppliers of asbestos to Amchem's Benjamin Foster Division for use as a product compound were the Johns-Manville Corporation, 22 E. 40th Street, New York, NY and the Philip Carey Company, P.O. Box 190, East Broughton Station, Quebec, Canada. Other suppliers of asbestos may have included the Lehman-Philips Company, 2550 Glendale Ave, Fort Worth Texas; and National Asbestos Mines Ltd., Thetford Mines, Quebec, Canada. Amchem maintains a repository of documents it still has in its possession from its former Benjamin Foster Division or Company. Upon Plaintiff's request, Amchem will make its document repository (excluding privileged material) available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date. However, Amchem's records do not provide information about specific shipments.

Q22.   With respect to each product (including loose asbestos fiber) you manufactured, refined, processed, sold or delivered, state whether you claim any caution, warning, caveat or other statement about the health involved in using the product and/or dust generated by the product was ever given to purchasers of the product or directed to the users of the product. If so, state separately for each product:

   a.     The precise wording of each caution or set of instructions;

   b.     For each asbestos product, the exact date you claim each caution was first used on that product;

   c.     The inclusive dates you contend any alleged warning was affixed to each of your asbestos-containing products;

   d.     Whether the wording of the alleged warning has been altered since its first appearance, and if so, when and how amended;

   e.     Specifically what prompted you to first affix or provide such caution, warning, caveat, statement or explanation, and what prompted the amendments, (i.e., if medical reports were relied upon; if so, identify such reports);

   f.     The name, title and present address of the author of each such warning and/or instructions;

   g.     Whether the warnings and instructions were physically attached to the product itself when sold and/or delivered by you, and if so, the method of attachment;

   h.     Whether you have a copy of the warning and/or instructions in your possession at the present time, and if so, where it is located;

   i.     Whether any studies, evaluations or analyses of any potential hazards of your asbestos product were conducted by you prior to your use of each warning and/or instructions. If so, identify the study by date, author, title and file number and state its present location.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory as unduly burdensome, harassing, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Amchem objects to this Interrogatory's incorrect assumption that any Amchem product which contained asbestos created a health hazard or required any warning, because any asbestos which may have been contained in certain Amchem products was encapsulated and, therefore, was unrespirable. Subject to its objections, Amchem responds as follows:

NYDOCS1-686844.                              23

a.    Amchem's products which contained asbestos were liquid or semi-liquid in form and were packaged in cartridges, pails or drums. It would be very difficult, if not impossible, to enclose a warning in the container of such a product. Amchem supplied application instructions for its products, copies of which are also available in the document repository. Amchem provided proper cautionary instructions by setting forth pertinent information on its product labels and product data sheets distributed with various Amchem products. According to Amchem's available records, there was no specific asbestos warning on the label. However, there was no danger of any user of or anyone exposed to an Amchem product inhaling respirable asbestos fiber or dust in any amount or in any amount sufficient to cause a health hazard or require a warning. See Amchem's response to Interrogatory No. 11, including all objections set forth therein.

b.    Amchem maintains a repository of documents it still has in its possession from its former Benjamin Foster Division or Company. The repository is maintained at Mayer, Brown, Rowe & Maw, 190 S. LaSalle Street, Chicago, Illinois 60603-3441. Ms. Mary Martin, legal assistant, serves as custodian of the documents. Upon Plaintiff's request, Amchem will make its document repository (excluding privileged material) available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

c.    Amchem maintains a repository of documents it still has in its possession from its former Benjamin Foster Division or Company. The repository is maintained at Mayer, Brown, Rowe & Maw, 190 S. LaSalle Street, Chicago, Illinois 60603-3441. Ms. Mary Martin, legal assistant, serves as custodian of the documents. Upon Plaintiff's request, Amchem will make its document repository (excluding privileged material) available for Plaintiff's review and

duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

     d.    Amchem's available records do not provide information as to specific changes in packaging and labeling over the course of its business.

     e.    See Amchem's response to Interrogatory No. 22a., including all objections set forth therein.

     f.    Amchem's available records do not provide information responsive to this Interrogatory.

     g.    Amchem's products which contained asbestos were liquid or semi-liquid in form, and depending on the product, were packaged in cartridges, pails or drums. Cartridges came in 11 or 28 fluid ounce sizes for sale to industrial users. Pails came in one, two, five or six gallon sizes. Packaging contained a label identifying the product, by brand, setting forth directions for the product's use and providing appropriate cautionary instructions. It would be very difficult, if not impossible, to enclose a warning in the container of such a product. Amchem provided proper cautionary instructions by setting forth pertinent information on its product labels and product data sheets distributed with various Amchem products.

     h.    Yes. Amchem's available product labels and product data sheets are available in its repository. Amchem maintains a repository of documents it still has in its possession from its former Benjamin Foster Division or Company. The repository is maintained at Mayer, Brown, Rowe & Maw, 190 S. LaSalle Street, Chicago, Illinois 60603-3441. Ms. Mary Martin, legal assistant, serves as custodian of the documents. Upon Plaintiff's request, Amchem will make its document repository (excluding privileged material) available for Plaintiff's review and

duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

i.     Yes. Amchem's products were subject to quality control and other testing. According to the best available information regarding tests prior to the 1976 sale of the Benjamin Foster Division, Amchem's products were manufactured to comply with both customer needs or specifications and all applicable government standards and were tested prior to their sale. Amchem's available records do not indicate that Amchem ever participated in or funded any such studies as to whether the asbestos in certain of Amchem's products would be hazardous to people, though the nature and composition of its products was such that no such testing or study was required. Amchem, under the direction of Wayne Ellis (now deceased), conducted some tests regarding friability of its products in the 1970s and concluded that its products were not friable.

Q23. State whether any of your distributors, dealers, contractors and/or customers were provided with any warnings, cautions, caveats or instructions regarding the use of your asbestos-containing products. If so, please state:

a.     By whom and when these instructions were first made;

b.     Whether the instructions were written or oral; if written, attach a copy; if oral, state the contents thereof;

c.     Whether your company carried out follow-up inspections to ascertain whether such instructions were adhered to and if so, please state when, where and by whom such inspections were made and the results of each such inspection.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory as vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Amchem further objects on the ground that in the absence of product identification by Plaintiff, this Interrogatory is premature and unduly burdensome. Amchem also objects to this Interrogatory as unduly burdensome because Amchem has manufactured numerous different

products which had many uses over its history. Subject to its objections, Amchem responds as follows: Yes.

a – b. Amchem did provide various written instructions and limitations concerning the use of its products which are reflected in the documents contained in the Amchem repository.

c.    Amchem's available records do not evidence any such follow-up inspections taking place on a regular basis. However, no such inspections were necessary with regards to asbestos because any Amchem product which may have contained asbestos was encapsulated in binder materials and, therefore, were not respirable.

Q24.  State the first time any officers of your Company discussed putting a warning or caution on any asbestos-containing product, and as to that first discussion, state:

    a.    the names of the persons who were involved in the discussions and the date and place of the discussions;

    b.    the identity and location of all documents memorializing the discussion;

    c.    the alleged substance of the discussion;

    d.    what action if any, the Company took as a result of the discussion.

RESPONSE:  See Amchem's General Objections. Subject to its objections, Amchem responds as follows:  The Benjamin Foster Division of Amchem Products, Inc. no longer transacts business.  The H.B. Fuller Company purchased the Benjamin Foster Division in 1976. Amchem's available records do not provide sufficient information to respond further.

Q25.  Do you know of any facts or documents to support a claim that you provided any warning, instructions or information as to the dangers of asbestos inhalation to any purchaser, insulator, construction worker, building trades worker or other user of your asbestos products in the New York area prior to 1972? If so for each such alleged warning:

    a.    Describe in detail each such warning, instruction or information given;

    b.    State the exact date of each such warning;

    c.    State whether such warning, instruction or information was oral or written;

d.   If oral, identify the substance of the warning instruction or information given and the date and name of the person to whom given;

e.   If written or printed, attach a copy of each warning, instruction and information, identify it by date given, title and reference number and state the manner and location whereby it was transmitted to users of the product.

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem responds as follows: Proper instructions and cautionary information (now contained in the Amchem document repository) were provided to any purchaser of Amchem products. See Amchem's response to Interrogatories Nos. 22 and 23. See Amchem's response to Interrogatory Nos. 15 and 16, including all objections stated therein.

Q26.   Do you claim that you ever recommended to purchasers or users of the asbestos-containing products you manufactured, processed, mined, distributed, or sold, that respirators, protective masks and/or protective safe guards be worn while working with, installing or removing your asbestos-containing product? If so, state separately for each product:

a.   The date or dates when each such recommendation was made;

b.   Who made the recommendation;

c.   When and precisely to whom the recommendations were made;

d.   If oral, the manner and substance of the recommendation;

e.   If written, identify the document by title, date, file designation and author of each such recommendation and the location and present custodian of such recommendation.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory's incorrect assumption that any product which contained asbestos created a health hazard. Subject to its objections, Amchem responds as follows: Amchem's available records do not indicate that Amchem made any such recommendation with respect to its products related to any products' asbestos content. In all such Amchem products, the asbestos fiber was fully encapsulated by a binder material and thus free fiber could not be released or emitted from any of the products sufficient to cause any health hazard. However, Amchem did advise users of certain protective

NYDOCS1-686844.                                28

equipment related to other certain characteristics of certain products, e.g. use of gloves or masks during application.

Q27. Did you at any time recommend that your own employees use respirators, protective masks or other precautionary safeguards when working with asbestos-containing materials. If so, state:

    a.    When and precisely to whom such recommendations were made;

    b.    Whether you ever supplied respirators, face masks to your employees and if so, the date when first supplied and whether you are supplying them now;

    c.    From what specific source you have obtained such respirators and face masks (state address of company and dates obtained).

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory's incorrect assumption that any product which contained asbestos created a health hazard or that respirator use or other protective device was required. Amchem further objects to this Interrogatory to the extent it seeks information regarding individuals who worked at Amchem plants where some products which contained asbestos were manufactured, on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence in that any exposure under such conditions would differ in type, quality, duration, and degree from any exposure at issue in this action. *See Smith v. Celotex*, 387 Pa. Super 340, 347-348, 564 A.2d 209 (Pa. Super Ct. 1989). In as much as Plaintiff was neither employed by Amchem nor worked at any Amchem plant, inquiries regarding Amchem employees or facilities are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to its objections, Amchem responds as follows: Amchem's available records do not provide information about whether Amchem made any such recommendation. However, Amchem did advise users of certain protective equipment related to other certain characteristics of certain products, e.g. use of gloves or masks during application. According to Amchem's best available information, dust masks and/or respirators were available to employees in its plants but Amchem does not

NYDOCS1-686844.                                29

currently have sufficient information to specify the time periods for such practices or to provide other information about any requirements for their use other than to state that Amchem complied with applicable governmental regulations related to occupational exposure to asbestos at its facilities. See Amchem's response to Interrogatory No. 12, including all objections set forth therein. Additionally, in any Amchem product which may have contained asbestos, the asbestos fibers were encapsulated by binder material compounds. As a result, neither the application or use of, nor any damage to the products which contained asbestos could cause asbestos fiber to be released from those products.

Q28.   Have you stopped producing, distributing and/or selling, or has asbestos been eliminated from any of the asbestos products listed in Answers 9 and/or 10? If so, state for each product:

    a.     The reason and date you stopped producing the product, or eliminated asbestos;

    b.     The names and titles of each person who recommended and who authorized or directed the action;

    c.     Whether any studies were conducted before you directed that production and sale of the product be stopped, or asbestos eliminated from the product, and if so, identify each study by date, author, title and subject matter and attach a copy.

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem responds as follows: Yes. The Benjamin Foster Division of Amchem Products, Inc. no longer transacts business. The H.B. Fuller Company purchased the assets of Amchem's Benjamin Foster Division in 1976. Amchem ceased manufacturing all of its products which contained asbestos, except for TRE-HOLD, a tree sprout inhibitor, not at issue in this suit, in 1976, when it sold the Benjamin Foster Division. Prior to the 1976 sale, the Benjamin Foster Division ceased manufacturing some of the products or brands which contained asbestos, but added others. However, Amchem's available records do not provide complete information as to the exact dates upon which manufacture of each such product or product brands may have ceased or the reason

why such manufacture ceased, although some products were discontinued due to obsolescence or lack of sales.

Q29. Have any officers or employees of defendant ever discussed or evaluated whether sales of your asbestos products would be damaged if the public learned of the health hazards associated with asbestos exposure? If so, state the dates and names of participants of each such meeting and identify all documents relating to such meetings.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory as harassing, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Amchem objects to this Interrogatory's incorrect assumption that any product which contained asbestos created a health hazard. Subject to its objections, Amchem responds as follows: Amchem's available records do not provide any information that is responsive to this Interrogatory.

Q30. At the time of the development of, and sale of each of your asbestos product did you attempt to determine whether the product complied with any allegedly applicable safety standards, orders or rules, regulations or design requirements promulgated by any professional society, association, or government body?

    a. If you did not, please state the reasons for not conducting such an analysis and identify the name of the person deciding not to conduct the analysis;

    b. If you did, identify the safety standards, safety orders, rules, regulations, which you claim you considered by naming the title, number, page and date of the regulation, and identifying the place where a copy of said regulation can be obtained.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory's incorrect assumption that any Amchem product which contained asbestos created any health hazard. Subject to its objections, Amchem responds as follows: Yes. According to the best available information regarding tests prior to the 1976 sale of the Benjamin Foster Division, Amchem's products were manufactured to comply with both customer needs or specifications and all applicable government standards and were tested prior to their sale. Amchem's products were subject to quality control and other testing. However, Amchem's available records do not

provide information as to product development and changes due to such testing. Also, the United States Environmental Protection Agency has exempted products containing encapsulated asbestos, such as Amchem's products, "[t]hat are encapsulated with bituminous or resinous binder materials," from the prohibition against spraying products containing asbestos. See 43 Federal Register No. 118, pp. 26372-73 (June 19, 1978), 40 C.F.R. § 61-22(e)(3). OSHA likewise exempted such products from the requirement that warnings be placed on asbestos-containing products in 1972. See 37 Federal Register No. 110, pp. 11316-11322 (June 7, 1972). Amchem states that it conducted monitoring at its plants to the extent required by OSHA or any applicable state regulations.

Q31. For each asbestos-containing product, identify and produce all promotional and/or advertising material used by you with regard to the sale and/or promotion and distribution of such products.

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem responds as follows: Amchem maintains a repository of documents it still has in its possession from its former Benjamin Foster Division or Company. Sales or advertising related documents are contained in this repository. The repository is maintained at Mayer, Brown, Rowe & Maw, 190 S. LaSalle St., Chicago, Illinois 60603-3441. Ms. Mary Martin, legal assistant, serves as custodian of the documents. Upon Plaintiff's request, Amchem will make its document repository (excluding privileged material) available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date. Amchem sold its Benjamin Foster Division in 1976 to H.B. Fuller Company. Thereafter Amchem ceased to manufacture or sell all products which contained asbestos except for TRE-HOLD. In 1977, Amchem merged with another corporation and ceased to exist as a separate entity.

Q32. Identify and produce pictures and descriptions of each product.

NYDOCS1-686844.                                         32

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory to the extent that it seeks waiver of the protection afforded attorneys' work product or any other applicable privilege, protection or immunity from discovery. Amchem also objects to this Interrogatory as vague, ambiguous and unclear, especially in so far that plaintiffs do not define or limit the meaning of the term "pictures." Amchem further objects to the extent that this Interrogatory seeks materials to be used as demonstrative exhibits, if any, which Amchem will disclose only to the extent required at time of trial. Subject to its objections, Amchem responds as follows: Amchem maintains a repository of documents it still has in its possession from its former Benjamin Foster Division or Company. The repository is maintained at Mayer, Brown, Rowe & Maw, 190 S. LaSalle St., Chicago, Illinois 60603-3441. Ms. Mary Martin, legal assistant, serves as custodian of the documents. Upon Plaintiff's request, Amchem will make its document repository (excluding privileged material) available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

Q33.   Were any brochures, writings, or other materials made available to distributors, dealers, contractors, ultimate users, or the general public concerning the design, manufacturer, use, quality and/or properties of the asbestos products referred to in Answers 9 and/or 10? If so, for each such brochure or other material:

a.     State the purpose of each brochure and given the name and present address, telephone number of the person responsible for the preparation and acceptance of the material for distribution on behalf of the company;

b.     Identify the brochure or material by author, date and present location and custodian, and attach copies of each.

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem responds as follows: Amchem's available product labels, product data sheets, sales brochures and documents contained in the Amchem document repository provide an indication as to color and other available properties for the particular products or product brands. Additional sales or

advertising related documents are contained in this repository. Upon Plaintiff's request, Amchem will make its document repository (excluding privileged material) available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date.

Q34.  Have you at any time since 1930 bought from, sold to, delivered or supplied any asbestos products to any other defendant in this action or to any other manufacturer listed in Attachment 3? If so:

   a.  Identify the products involved by name and description;

   b.  List the dates, quantity and price of each sale and the names of the persons who placed or accepted the order;

   c.  Were any warnings regarding the health hazards of the product given or received and if so identify the warning by description, date, to whom it was given and by who received, and if oral state the substance and if written identify the document and state its present location.

RESPONSE:  See Amchem's General Objections. Amchem objects to the extent that Plaintiff has not specified time periods for particular work sites. Amchem further objects to the extent this Interrogatory seeks information for job sites unrelated to Plaintiff's occupation for the time period in question. Subject to its objections, Amchem responds as follows: Amchem's available records indicate that the Benjamin Foster Company or Division was the sole producer, manufacturer or designer of all of Amchem's products that contained asbestos, with the exception of TRE-HOLD. According to Amchem's available records, Amchem never purchased products which contained asbestos which it re-sold under any label and never entered into any such labeling, relabeling or licensing agreement.

The burden of reviewing Amchem's business records for the answer to this Interrogatory is substantially the same for Plaintiff as for Amchem. Accordingly, upon Plaintiff's request, Amchem will make its sales records available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and

date. Amchem sales of products which contained asbestos (with the sole exception of TRE-HOLD, which is not relevant to this action) were made through the Benjamin Foster Division, which Amchem sold to the H. B. Fuller Company in 1976. The Benjamin Foster Division sales records that are still in Amchem's possession include sales by Amchem to end users and distributors; they do not include a record of distributor sales. The remaining sales records still under Amchem's control are now in the custody of Amchem's counsel, Mayer, Brown, Rowe & Maw, 190 S. LaSalle St., Chicago, Illinois 60603-3441.

Q35. With respect to any product manufactured by you which does not contain asbestos, have you ever included a warning with the product indicating that it may in some way be harmful to human beings? If so, for each such non-asbestos containing product state:

   a.    The name of the product, its intended use or purpose, and the chemical composition or ingredients of the product;

   b.    The manner in which it is thought that the product may cause harm to human beings;

   c.    The size, color and contents of each warning;

   d.    The date warning was first given to the public;

   e.    The names, addresses and titles of the people responsible for or participating in the decision to provide the warning; and

   f.    Identify every document that relates to the making of the decision to provide a warning.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory as unduly burdensome, oppressive, harassing, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence because products which do not contain asbestos are not at issue in this action. Subject to its objections, Amchem responds as follows: Amchem's available records do not provide sufficient information to respond to this Interrogatory.

Q36. Were any of the asbestos-containing products sold by you to private persons or companies (i.e., non-military or non-government sales) the same products you sold to the government pursuant to military or federal specifications? If so please state:

a.   Your name or designation of the product;

b.   The military or federal specification you claim is applicable;

c.   The person or company to whom sold and the date and amount sold.

RESPONSE: See Amchem's General Objections. Amchem objects to the extent that Plaintiff has not specified time periods for particular work sites. Amchem further objects to the extent this Interrogatory seeks information for job sites unrelated to Plaintiff's occupation for the time period in question. Amchem also objects to this Interrogatory as vague, ambiguous and unclear. Subject to its objections, Amchem responds as follows: Yes. Certain products containing asbestos were also manufactured in accordance with United States Military specifications, as indicated in Amchem's records. Amchem's repository contains product data and formulas for Amchem's products which contained asbestos.

The burden of reviewing Amchem's business records for the answer to this Interrogatory is substantially the same for Plaintiff as for Amchem. Accordingly, upon Plaintiff's request, Amchem will make its sales records available for Plaintiff's review and duplication, provided that an acceptable confidentiality order has been entered into, at a mutually convenient time and date. Amchem sales of products which contained asbestos (with the sole exception of TRE-HOLD, which is not relevant to this action) were made through the Benjamin Foster Division, which Amchem sold to the H. B. Fuller Company in 1976. The Benjamin Foster Division sales records that are still in Amchem's possession include sales by Amchem to end users and distributors; they do not include a record of distributor sales. The remaining sales records still under Amchem's control are now in the custody of Amchem's counsel, Mayer, Brown, Rowe & Maw, 190 S. LaSalle St., Chicago, Illinois 60603-3441.

Q37.  Do you claim that you did anything prior to 1972 to notify users of asbestos-containing products of the possible dangers of inhalation of asbestos dust and fibers? If so, explain in detail what you did, to whom, and give the dates.

RESPONSE: See Amchem's General Objections. Amchem further objects to this Interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to its objections, Amchem responds as follows: Amchem's available records do not provide sufficient information to answer this Interrogatory, other than to say that there was no danger of inhalation presented by proper use of any Amchem product, some of which may have contained small amounts of encapsulated asbestos. Because any asbestos in an Amchem product was encapsulated by a binder material, it posed no danger of inhalation. See Amchem's response to Interrogatory No. 11, regarding encapsulation.

Q38. Had you at any time prior to 1973 performed, participated in, or financed any tests, studies, investigations or analyses to determine the asbestos level produced when your asbestos products were used, installed or removed from a prior installation?

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory's incorrect assumption that any Amchem product which contained asbestos created any health hazard or that tests or studies were necessary or required. Subject to its objections, Amchem responds as follows: Amchem sold its Benjamin Foster Division in 1976 to H.B. Fuller Company. Thereafter, Amchem ceased to manufacture or sell all products which contained asbestos except for TRE-HOLD. In 1977, Amchem merged with another corporation and ceased to exist as a separate entity. Amchem's available records do not indicate that Amchem ever participated in or funded any such tests or studies, though the nature and composition of its products was such that no such testing or study was required. Amchem's products would not release fibers in excess of threshold limit value because the asbestos in Amchem's products was encapsulated and, consequently, could not release asbestos fibers or dust in any amount or in any amount sufficient to cause a health hazard. See Amchem's response to Interrogatory No. 11, regarding encapsulation. Amchem, under the direction of Wayne Ellis (now deceased),

conducted some tests regarding friability of its products in the 1970s and concluded that its products were not friable.

Q39. Had you at any time prior to 1973 performed, participated or financed any tests, studies, investigations or analyses to determine the effects of your product on workers using or working with any of your asbestos products?

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible evidence. Amchem further objects on the ground that in the absence of product identification by Plaintiff, this Interrogatory is premature and unduly burdensome. Amchem also objects to this Interrogatory as unduly burdensome because Amchem over the years manufactured numerous different products which had many uses. Amchem further objects to this Interrogatory to the extent that it does not relate to the time period or locations in which Plaintiff was allegedly exposed to any product which contained asbestos. Subject to its objections, Amchem responds as follows: Amchem's available records do not provide information responsive to this Interrogatory. However, Amchem's products did not give off dust during application or during normal use. In all products, the asbestos fibers were encapsulated by binder material compounds. As a result, neither the application or use of, nor any damage to the products which contained asbestos could cause asbestos fiber to be released from those products sufficient to cause a health hazard.

Q40. Had you, at any time prior to 1973 performed, participated in or financed any tests, studies, investigations or analyses which had the purpose to prevent, minimize, or eliminate inhalation of asbestos dust or fibers by those using or exposed to your asbestos products?

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem answers as follows: See Amchem's response to Interrogatory No. 39, including all objections set forth therein.

Q41. Had you at any time prior to 1973 performed, funded or participated in any investigation, study, test or analysis concerning asbestos-related diseases, asbestosis, pulmonary diseases or cancer?

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem answers as follows: No. See Amchem's responses to Interrogatories Nos. 38 and 39, including all objections set forth therein.

Q42. Had you, at any time prior to 1973 performed, participated in or financed any tests, studies, investigations or analyses to determine the effects of inhalation of asbestos dust or fibers on any one using or being exposed to asbestos products manufactured by your company?

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem answers as follows: No. Amchem's products did not give off dust during application or during normal use. See Amchem's responses to Interrogatories Nos. 38 and 39. Amchem's available records do not provide further information responsive to this Interrogatory. Investigation continues.

Q43. Have you ever performed, participated in or financed any studies to determine whether any type of respirator and/or protective mask would either eliminate or reduce asbestos inhalation to safe levels?

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of admissible evidence. Amchem further objects on the ground that in the absence of product identification by Plaintiff, this Interrogatory is premature and unduly burdensome. Amchem further objects to this Interrogatory to the extent that it does not relate to the time period or locations in which Plaintiff was allegedly exposed to any product which contained asbestos. Amchem further objects to this Interrogatory to the extent it seeks information regarding individuals who worked at Amchem plants where some products which contained asbestos were manufactured, on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence in that any exposure under such conditions would differ

NYDOCS1-686844.                         39

in type, quality, duration, and degree from any exposure at issue in this action. *See Smith v. Celotex,* 387 Pa. Super 340, 347-348, 564 A.2d 209 (Pa. Super Ct. 1989). In as much as Plaintiff was neither employed by Amchem nor worked at any Amchem plant, inquiries regarding Amchem employees or facilities are not relevant and not reasonably calculated to the to the discovery of admissible evidence.

Subject to its objections, Amchem responds as follows: Amchem's available records do not provide sufficient information that is responsive to this request. However, there was no need for Amchem to be involved in such studies because any asbestos contained in an Amchem product was encapsulated by binder material compounds. Accordingly, Amchem's products which contained asbestos did not give off dust during application or during normal use.

Q44. Have you ever undertaken or financed any tests or studies to determine whether any type of ventilator or ventilating system would eliminate or decrease the number of airborne asbestos fibers in confined spaces?

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem responds as follows: Amchem's available records do not provide sufficient information that is responsive to this request. See Amchem's response to Interrogatory No. 43, including all objections set forth therein.

Q45. For each study identified in response to Questions 38-44, identify:

    a.    The subject matter, title, date and names of the persons who conducted and/or authored the study;

    b.    The reason for the study;

    c.    The date the study was completed;

    d.    If the results were disseminated, where and to whom and if published the name and identity of the publication;

    e.    The results of each study, and the data and assumptions relied on;

    f.    If in writing, identify it by date, title, identification number, present location and custodian and attach a copy.

RESPONSE: See Amchem's responses to Interrogatories Nos. 38 – 44 above, including all objections set forth therein. In further response:

    a.    Amchem, under the direction of Wayne Ellis, conducted some tests regarding the friability of asbestos in certain products.

    b.    Amchem conducted the testing in response to media reports concerning asbestos in the 1970s.

    c.    The testing was conducted in the early to mid-1970s.

    d.    Amchem's available documents do not evidence where and to whom any results from this testing was disseminated.

    e.    In the view of Wayne Ellis, the testing confirmed that the encapsulated asbestos of certain Amchem products was not friable and did not pose a health threat.

    f.    Amchem's available documents do not provide further information that is responsive to this Interrogatory.

Q46.    State whether you took any action as a result of any of the studies listed in answer to interrogatories 38, 39, 40, 41 42, 43 and 44. If so:

    a.    Describe the date and action taken;

    b.    Identify who authorized or directed the action;

    c.    Why the action was taken;

    d.    Identify all documents discussing the study, the action considered and the action taken by date, title, subject, author and present custodian and location and produce the documents;

    e.    If you have not taken any action state in detail, why not;

    f.    If you have not given any consideration to taking such actions, state in detail the reasons why.

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem responds as follows: Because the results of friability testing confirmed that Amchem's products that contained asbestos were not friable, there was no need for Amchem to take further action. This conclusion was supported by the United States Environmental Protection Agency when it exempted products containing encapsulated asbestos, such as Amchem's products, "[t]hat are encapsulated with bituminous or resinous binder materials," from the prohibition against spraying products containing asbestos. See 43 Federal Register No. 118, pp. 26372-73 (June 19, 1978), 40 C.F.R. § 61-22(e)(3). Additionally, OSHA has likewise exempted such products from the requirement that warnings be placed on asbestos-containing products in 1972. See 37 Federal Register No. 110, pp. 11316-11322 (June 7, 1972).

Q47. From the year 1920 to date, have you supported by gift, grant, direct cash or property payment, any kind of medical research containing asbestos? If so, state:

    a.    The date or dates of such support;

    b.    The dollar amount paid or contributed;

    c.    The identity of the persons and/or organizations carrying out the research study;

    d.    The title, name or other identification of each such study;

    e.    Identify and produce all documents relating to each such study.

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem responds as follows: Amchem's available records do not indicate whether Amchem was a member of or funded any such medical library or study.

Q48. Have you, at any time prior to 1975, conducted, financed, or had conducted for you any asbestos inspection or made any dust count in any facility where your asbestos products listed in Answers 9, 10 and/or 11 were used? If so, state the date, place and people involved in each such inspection or test and identify all records.

RESPONSE: See Amchem's General Objections. Subject to its objections, Amchem states that it is not aware of any such inspections, tests, or studies conducted at facilities other than its own. See Amchem's response to Interrogatory No. 49, including all objections stated therein, for further information concerning Amchem facilities.

Q49. Had you, at any time prior to 1975, conducted, financed, or had conducted for you any asbestos inspection or made any dust count in any of your own plants which are or were engaged in the manufacture of asbestos products. If so, state the date, place and people involved in each such inspection or test, the results of the tests and identify all records.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory as harassing, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Amchem further objects to this Interrogatory to the extent it seeks information regarding individuals who worked at Amchem plants where some products which contained asbestos were manufactured, on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence in that any exposure under such conditions would differ in type, quality, duration, and degree from any exposure at issue in this action. See Smith v. Celotex, 387 Pa. Super 340, 347-348, 564 A.2d 209 (Pa. Super Ct. 1989). In as much as Plaintiff was neither employed by Amchem nor worked at any Amchem plant, inquiries regarding Amchem employees or facilities are not relevant and not reasonably calculated to the to the discovery of admissible evidence. Subject to its objections, Amchem responds as follows: According to Amchem's best available information, Amchem began to conduct dust counts and air sampling in its facilities where asbestos containing products were manufactured in accordance with government regulations enacted in the 1970's, but its remaining records do not state the specific technique employed. Available information indicates that John Horn conducted such tests at Amchem's Pennsylvania facilities. Amchem's available records do not provide information about these tests, the dates they were conducted or their results. Investigation

continues. Amchem states that it conducted monitoring at its plants to the extent required by OSHA or any applicable state regulations.

Q50. Does your company recognize that workers in the following trades were foreseeable users of your asbestos products? If so, when did you come to such a recognition?

a.   Pipe Laggers;

b.   Pipe Fitters;

c.   Welders;

d.   Burners;

e.   Sheetmetal Workers;

f.   Tapers;

g.   Chippers;

h.   Plasterers;

i.   Riggers;

j.   Grinders;

k.   Inspectors;

l.   Shipwrights;

m.   Painters;

n.   Boilermakers;

o.   Insulators;

p.   Custodians;

q.   Planners;

r.   Testers;

s.   Teachers.

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory on the grounds that it is vague and ambiguous because the "trades" listed are not defined. Amchem

further objects to this Interrogatory on the grounds that it is not reasonably calculated to lead to

the discovery of admissible evidence. Amchem also objects to this Interrogatory on the grounds

that it is irrelevant, to the extent there is no available evidence that any Amchem product was

present at Plaintiff's alleged job sites. Amchem further objects to this Interrogatory to the extent

it asks Amchem to reach a legal conclusion. Subject to its objections, Amchem responds as

follows: Amchem lacks sufficient information to respond to this Interrogatory. The discovery

process and Amchem's own investigation into this matter are ongoing. Amchem thus reserves

its right to dispute this Interrogatory and supplement this response as information in this case

warrants.

Q51. Does your company recognize that the types of workers listed in Question 50 would be exposed to asbestos in the course of working on jobs where other trades would be using asbestos products?

RESPONSE: See Amchem's General Objections. Amchem further objects to this Interrogatory

on the grounds that it is not reasonably calculated to lead to the discovery of admissible

evidence. Amchem also objects to this Interrogatory to the extent it necessitates speculation

concerning the products of other Defendants. Subject to its objections, Amchem responds as

follows: Amchem lacks sufficient information to respond to this Interrogatory. The discovery

process and Amchem's own investigation into this matter are ongoing. Amchem thus reserves

its right to dispute this Interrogatory and supplement this response as information in this case

warrants. Further, workers would not be exposed to respirable asbestos from any Amchem

product because any asbestos that was contained in an Amchem product was encapsulated by

binder material compounds.

Q52. Does your company recognize that it was foreseeable that people working in the same area where your asbestos products were being used or installed would inhale and/or ingest asbestos fibers emitted from the use of your products?

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Amchem further objects to this Interrogatory on the grounds that it is overly broad, vague and ambiguous. Amchem further objects to this Interrogatory to the extent that it calls for Amchem to render an expert medical or scientific opinion. Amchem also objects to this Interrogatory to the extent it asks Amchem to reach a legal conclusion. Subject to its objections, Amchem responds as follows:  No, because any asbestos contained in an Amchem product was encapsulated by binder material compounds. As a result, neither the application or use of, nor any damage to the products which contained asbestos could cause asbestos fiber to be released from those products sufficient to cause a health hazard. The discovery process and Amchem's own investigation into this matter are ongoing. Amchem thus reserves its right to dispute this request and supplement this response as information in this case warrants. Amchem reserves the right to have an expert witness address these issues.

Q53.   Does your company recognize that it was foreseeable that tradesmen listed in Question 50 might inhale and/or ingest asbestos fibers released from your asbestos products?

RESPONSE: See Amchem's General Objections. Amchem objects to this Interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Amchem further objects to this Interrogatory on the grounds that it is overly broad, vague and ambiguous. Amchem further objects to this Interrogatory to the extent that it calls for Amchem to render an expert medical or scientific opinion. Amchem also objects to this Interrogatory to the extent it asks Amchem to reach a legal conclusion. Subject to its objections, Amchem responds as follows: No. See Amchem's response to Interrogatory No. 52, including all objections set forth therein.

Q54.   Do you contend that any respirators or other breathing devices would prevent inhalation of the asbestos dust and fibers released from your product? If so, state:

NYDOCS1-686844.                         46

a.    When the respirator was sold;

b.    Give the detailed description of such respirator or other breathing device;

c.    The first date you reached the conclusion;

d.    The basis of your claim that use of the respirator will prevent the inhalation of such dust and fibers;

e.    Identify any relevant tests performed by date, title, author and number.

RESPONSE:  See Amchem's General Objections.  Amchem objects to this Interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Amchem further objects to this Interrogatory to the extent that it calls for Amchem to render an expert medical or scientific opinion.  Amchem objects to this Interrogatory's incorrect assumption that any Amchem product which contained asbestos created a health hazard or that respirator use was required.  Subject to its objections, Amchem responds as follows:  In all Amchem's products, the asbestos fibers were encapsulated by binder material compounds.  As a result, neither the application or use of, nor any damage to the products which contained asbestos could cause asbestos fiber to be released from those products.  Amchem lacks sufficient information to respond further to this interrogatory.  The discovery process and Amchem's own investigation into this matter are ongoing.  Amchem thus reserves its right to dispute this request and supplement this response as information in this case warrants.  Amchem reserves the right to have an expert witness address these issues.

Q55.  From the year 1930 to the present, identify:

a.    The name of each physician in your employ and/or employ of your subdivision or contract unit;

b.    The current and/or last known address for each such individual;

c.    The dates of employment of each such individual;

d.    The job duties and/or responsibilities for each such individual identified;

e.    The duration of each such individual's employment, the office address or duty assignment location held by each such individual, and the dates associated with each such assignment.

RESPONSE:    See Amchem's General Objections. Subject to its objections, Amchem responds as follows:

a-e.    Amchem did not have a medical department or retain physicians at its facilities. Amchem's available records do not provide further information about other personnel or departments involved specifically with medical matters. Amchem Products, Inc. sold the Benjamin Foster Division in 1976 to H.B. Fuller Company and then ceased to manufacture or sell all products which contained asbestos except for TRE-HOLD. In 1977, Amchem merged with another corporation and ceased to exist as a separate entity.

Q56.    Have you, at any time since 1930, maintained any office or department dealing with medical research? If so, state:

a.    The name and location of such department; and

b.    The name, address and title of each person who has been in charge of the department.

RESPONSE:    See Amchem's General Objections. Subject to its objections, Amchem responds as follows: although Amchem did not have a medical department at its facilities, Amchem, through its Director of Research Wayne P. Ellis, made a reasonable effort to be informed of technical research and developments relevant to its products by collecting various pamphlets and articles and keeping abreast of the pertinent product related literature.

a.    The pamphlets, articles and other literature were maintained in the same building as the Benjamin Foster laboratory, which during various time periods was located in Ambler and Philadelphia, Pennsylvania. Amchem's general library was established in 1941.

b.    Ms. Illa Brustamare worked in Amchem's library for part of the period of the library's operation. Wayne Ellis also supervised the library as part of his duties. Amchem's

available records do not provide further information about other personnel or departments involved specifically with medical and related scientific matters or about its general library.

Q57.   From the year 1930 to the present, state:

    a.   The address of each medical library maintained by you or your subdivisions and/or contract units;

    b.   When each such library came into existence;

    c.   The custodian of each such library facility records, such as individual's dates of employment and last known address or current address.

RESPONSE:   See Amchem's response to Interrogatory No. 56, including all objections set forth therein.

Q58.   For each facility identified in response to the two proceeding interrogatories, state the name or title of each medical journal or periodical subscribed to and the inclusive dates of each such subscription.

RESPONSE:   See Amchem's General Objections.  Subject to its objections, Amchem responds as follows:  Amchem through its former Director of Research, Wayne P. Ellis, subscribed to multiple trade journals, including Journal of Paint Technology, the Engineering News Record, Chemical Week and the Air Conditioning, Heating and Refrigeration News.  Also Amchem's repository contains articles on asbestos and health, which were collected by Wayne P. Ellis, as well as other documents reflecting the periodicals and journals that Amchem received.

Q59.   Other than the medical library facilities referenced in the answers to the immediately preceding three Interrogatories, state the identity of each medical library, from 1930 to date, in which you held a membership, or funded by way of contribution, gift, grant, or any other direct cash or property payments.

RESPONSE:   See Amchem's General Objections.  Subject to its objections, Amchem responds as follows:  Amchem's available records do not indicate that Amchem was a member of or funded any such medical library.