UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

N⁰ 07 Civ. 6433 (RJS)
_____

MOSES SHERMAN AND LEOLA SHERMAN,

Plaintiffs,

VERSUS

A.J. PEGNO CONSTRUCTION CORP., ET AL.,

Defendants.

_____

N⁰ 07 Civ. 6441 (RJS)
_____

JOHN ALEXANDER,

Plaintiff,

VERSUS

AMCHEM PRODUCTS, INC., ET AL.,

Defendants.

_____
MEMORANDUM AND ORDER
November 30, 2007
_____

RICHARD J. SULLIVAN, District Judge:

On July 16, 2006, defendants Ford Motor Co. ("Ford") and General Motors Corp. ("GM") (collectively, "defendants") removed the above-entitled actions from state court. For the reasons that follow, the Court remands the actions to state court for lack of subject matter jurisdiction.

I. BACKGROUND[1]

On November 6, 2006, plaintiffs Moses Sherman and Leola Sherman (the "Shermans") commenced an action in the Supreme Court of the State of New York, County of New York (the "Sherman Action").[2] (Sherman Removal Pet. ¶ 1.) On November 21, 2006, plaintiff John Alexander ("Alexander") commenced a separate action in the Supreme Court of the State of New York, County of New York (the "Alexander Action").[3] (Alexander Removal Pet. ¶ 1.)

In the Actions, plaintiffs sought damages on the basis of personal injuries allegedly arising from Moses Sherman's and Alexander's exposure to asbestos-containing materials. (Sherman Am. Compl. ¶ 1; Alexander Am. Compl.) Plaintiffs filed amended complaints in each action containing a single allegation as against all of the defendants,[4] asserting that plaintiffs "repeat[] and reallege[] every allegation in the . . . Standard Asbestos Complaint for Personal Injury No. 7 [(the "Standard Complaint")] as if fully incorporated herein as it pertains to the defendants in the aforementioned caption." (Alexander Am. Compl. ¶ 7; Sherman Am. Compl. ¶ 7.) The Standard Complaint was filed with the New York State court and alleges, *inter alia*, that:

> Plaintiff(s) continuously worked with and was exposed to the asbestos and asbestos-containing products and materials mined, manufactured, processed, imported, converted, compounded, installed, or sold by the defendants. During the course of his employment, plaintiff was exposed to the defendants' asbestos and asbestos containing materials to which exposure directly and proximately caused him to develop an asbestos related disease. . . . The asbestos related disease of the plaintiff was proximately caused by the defendants' negligent actions in that . . . they negligently designed, process, manufacture, packaged, distributed, delivered and/or installed the asbestos-containing products to which the plaintiff was exposed . . . .

---

[1] This background is drawn from the filings in the underlying state court actions, the notices of removal and the exhibits attached thereto, and the parties' submissions regarding the instant motions to remand. The information recited by the Court is undisputed, unless otherwise noted.

[2] According to plaintiffs' submissions, Moses Sherman has died since the removal of the Sherman Action. (*See* Sherman Pls.' Mem. at 10.)

[3] Hereinafter, the Court refers to the Shermans and Alexander collectively as "plaintiffs", and to the Sherman and Alexander actions collectively as the "Actions."

[4] Although there is some variation between the parties named as defendants in the respective Actions, the removing defendants, Ford and GM, and the non-diverse defendant discussed *infra*, Union Carbide, were named as defendants in both Actions.

(Std. Compl. ¶¶ 159-172.)[5]

On July 26, 2007, defendants Ford and GM removed the Actions to federal court, asserting federal jurisdiction on the basis of the complete diversity of the parties pursuant to 28 U.S.C. § 1332.[6] (Sherman Removal Pet. ¶ 5; Alexander Removal Pet. ¶ 5.)  In the petitions, defendants assert that diversity jurisdiction over the Actions is appropriate notwithstanding the fact that one non-diverse defendant, Union Carbide ("UC"), was named in the amended complaints filed in the Actions in New York State court.[7] (*See* Sherman Removal Pet. ¶ 13; Alexander Removal Pet. ¶ 14.)  Specifically, defendants assert that UC was fraudulently joined in the Actions solely for the purpose of destroying diversity of the parties, and, thus, its presence in the Actions does not defeat removal.  (*See id.* ¶¶ 14-19; Sherman Removal Pet. ¶¶ 14-19.)[8]

On July 31, 2007, Alexander submitted a motion to remand the Alexander Action to state court.  On August 1, 2007, Sherman submitted a motion to remand the Sherman Action to state court.

Following removal of the Actions to federal court, the United States Judicial Panel on Multidistrict Litigation (the "Panel") issued a conditional order transferring the Actions to the Eastern District of Pennsylvania.  (*See* Judicial Panel's Letter to the Court dated Sept. 6, 2007.) Plaintiffs have submitted a joint opposition to the Panel's conditional transfer order, which is currently pending before the Panel.  The Panel has informed the Court that it is "free to rule on any pending motions" in the Actions prior to a final transfer decision by the Panel, "especially if the [pending] motion[s] raise[]

---

[5] Rule 10(c) of the Federal Rules of Civil Procedure expressly permits this type of pleading by reference. Fed. R. Civ. P. 10(c) ("Statements in a pleading may be adopted by reference in a different part of the same pleading or *in another pleading* . . . .") (emphasis added); *see* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1326 ("The ability to incorporate matter from other pleadings is especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable."); *Arseneault v. Congoleum*, No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *9 (S.D.N.Y. March 26, 2002) (rejecting the removing defendants' fraudulent joinder argument and granting remand following an analysis of the plaintiff's pleadings, which incorporated by reference the same Standard Complaint at issue in the instant Actions); *see also Cooper v. Nationwide Mut. Ins. Co.*, No. 02 Civ. 2138, 2002 WL 31478874, at *5 (E.D. Pa. Nov. 7, 2002) (finding that "nothing in Rule 10(c) precludes a party from incorporating all of an earlier pleading" filed in a state court action).

[6] Hereinafter, for the purpose of convenience, the Court refers to the arguments of the Shermans and Alexander collectively as "plaintiffs' arguments", and to the arguments of the removing defendants, Ford and GM, collectively as "defendants' arguments."

[7] Plaintiffs and UC are citizens of New York State.

[8] In the Alexander Action, defendants assert that a second non-diverse defendant, Bayer CropScience ("Bayer"), was also fraudulently joined in the action. (Alexander Removal Pet. ¶ 14.)  However, in their respective moving papers, the parties have failed to address the claims against Bayer in sufficient detail so as to permit this Court to analyze the fraudulent joinder issue as it relates to that defendant.  Thus, the Court focuses initially on the fraudulent joinder issue as it relates to UC; if UC is a proper defendant in the Actions, then there is no complete diversity of the parties and no jurisdiction exists regardless of whether or not Bayer was properly joined.  Accordingly, because the Court, as set forth *infra*, finds that defendants have failed to prove fraudulent joinder of UC, the Court need not address the fraudulent joinder issue as it relates to defendant Bayer.

questions likely to arise in . . . the transferee court." (*Id.*)

## II. DISCUSSION

Plaintiffs assert that remand is appropriate because there is not complete diversity among the parties in the Actions. In response, defendants contend that (1) there is complete diversity among the parties to the Actions; and (2) the non-diverse defendant in the Actions, UC, was fraudulently joined and, thus, should not be considered as a party for the purpose of determining diversity jurisdiction. For the reasons that follow, the Court finds that remand is required because there is (1) a lack of complete diversity among the parties, and (2) an insufficient basis to conclude that UC was fraudulently joined in the Actions.

### A. Diversity Jurisdiction

#### 1. Legal Standard

28 U.S.C. § 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." As such, "any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co. v. Hous. Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)). Furthermore, "[w]hen a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00 Civ. 1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. April 17, 2006) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quotation omitted)). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Intern'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (internal citation omitted); *accord Somlyo v. J. Lu-Rob Enter., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006).

"Generally, a defendant in an action pending in state court may remove that case to federal court only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (internal citation omitted); *see* 28 U.S.C. § 1441(b).[9] Here, defendants assert that the Court has diversity jurisdiction over the Actions pursuant to Section 1332. "[T]here must be complete diversity of citizenship between all plaintiffs and all defendants named in all claims in order for jurisdiction over any claim to be based upon

---

[9] Section 1441(b) provides that:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

4

diversity of citizenship." *K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 130 (2d Cir. 1995) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) (additional internal citations omitted)). Furthermore, the party invoking diversity jurisdiction must demonstrate that complete diversity among the parties existed at the time removal was sought to federal court. *See United Food*, 30 F.3d at 301; *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56-57 (2d Cir. 2006) ("We generally evaluate jurisdictional facts . . . on the basis of the pleadings, viewed at the time when defendant files the notice of removal.") (citing *Vera v. Saks & Co.*, 335 F.3d 109, 116 n. 2 (2d Cir. 2003)); *see also McGowan v. Hoffmeister*, No. 05 Civ. 2879 (HB), 2005 WL 1283579, at *2 ("[D]iversity is determined at the time of filing . . . ."); *Arseneault v. Congoleum*, No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *2 (S.D.N.Y. March 26, 2002) ("The general rule is that 'where removal is premised on diversity jurisdiction, . . . complete diversity must exist both at the time the action is commenced and at the time of removal.'") (citing *Pepsico, Inc. v. Wendy's Int'l, Inc.*, 118 F.R.D. 38, 40 (S.D.N.Y. 1987)); *LGP Gem Ltd. v. Cohen*, 636 F. Supp. 881, 882 (S.D.N.Y. 1986) ("If diversity of citizenship provides the jurisdictional basis for removal to federal court, the parties must be diverse not only when the petition is filed, but also when the case was first brought.") (internal citation omitted). "If the record . . . does not reflect diversity" at the time removal was sought, "removal was improper and the case must be remanded." *Vasura v. Acands*, 84 F. Supp. 2d 531, 535-36 (S.D.N.Y. 2000).

2. Analysis

Here, it is undisputed that, at the time removal was sought, the non-diverse defendant UC was a party to the Actions. (*See* Sherman Removal Pet. ¶¶ 6, 15 ("Union Carbide was . . . named in the Amended Complaint . . . ."); Alexander Removal Pet. ¶ 6.) Thus, because plaintiffs and UC are all citizens of New York, removal of the Actions on the basis of diversity appears to be improper under Section 1332.

However, defendants assert that, notwithstanding the non-diverse nature of the parties at the time of removal of the Actions, there is now complete diversity among the parties due to the forthcoming settlement between UC and plaintiffs, and, thus, diversity jurisdiction is appropriate at this time. (*See* Alexander Defs.' Opp. Mem. at 1-4; Sherman Defs.' Opp. Mem. at 1-4.) Specifically, defendants assert that, following removal of the Actions to federal court, plaintiffs reached a settlement agreement with UC, but that plaintiffs are intentionally delaying the exchange of settlement documents with UC in order to maintain the presence of a non-diverse party, and, thus, prevent this Court from exercising diversity jurisdiction over the Actions. (*See* Sherman Defs.' Opp. Mem. at 3 ("Dilatory delays in exchanging settlement papers should not be allowed to defeat what would otherwise be appropriate jurisdiction."); Alexander Defs.' Opp. Mem. at 2.) By contrast, plaintiffs represent to the Court that they are currently "engaged in settlement discussions" with UC, and "have reached a tentative oral [settlement] agreement" with regard to the Actions "as part of a global settlement that is still quite a ways from completion." (Sherman Pls.' Oct. 9, 2007 Ltr. at 2; *see* Alexander Pl.'s Nov. 12, 2007 Ltr. at 2.)

5

The Court need not address the parties' contrasting portrayals of plaintiffs' settlement negotiations with UC. Instead, the Court finds that, because it is beyond doubt that there was not complete diversity among the parties to the Actions at the time of removal, this Court lacks jurisdiction over the Actions regardless of whether or not UC has consummated a post-removal settlement with plaintiffs. *See United Food*, 30 F.3d at 301; *Acands*, 84 F. Supp. 2d at 535-36; *see also Fed. Ins. Co.*, 422 F. Supp. 2d at 368 ("[T]he propriety of removal is to be determined by the pleadings at the time of removal.") (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) ("[T]he right to remove . . . was to be determined according to the plaintiffs' pleading at the time of the petition for removal."); *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 399 F. Supp. 2d 356, 363 (S.D.N.Y. 2005) ("A court must thus consider the complaint at the time of removal to determine if removal was appropriate in the first place. . . . There is a 'judicial reluctance to make jurisdiction hinge on fortuities or *ex parte* tactical moves.'"); and *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 256 F. Supp. 2d 884, 889 n. 5 (S.D. Ind. 2003) ("[R]emoval must be determined on the basis of the plaintiffs' pleadings at the time of the removal, without regard to subsequent developments.")). Indeed, "[i]t is not relevant in determining the propriety of removal — which is measured as of the date of removal — that diversity was later created by dismissal of the non-diverse defendant. If the removal was not proper in the first instance, the state court was never divested of jurisdiction and the federal court consequently has no jurisdiction to exercise." *Vasura*, 84 F. Supp. 2d at 536; *see Fed. Ins. Co.*, 422 F. Supp. 2d at 368 ("[A] post-removal settlement with a non-diverse party does not cure a removal that was defective at the time it was filed.") (citing *Vasura*, 84 F. Supp. 2d at 536).

Accordingly, because plaintiffs' post-removal settlement with UC cannot, as a matter of law, cure the defective removal of the Actions, this Court lacks subject matter jurisdiction over the Actions — that is, unless defendants can establish that UC was fraudulently joined in the Actions.

### B. Fraudulent Joinder

#### 1. Legal Standard

The doctrine of fraudulent joinder provides that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998). "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (citing *Pampillonia*, 138 F.3d at 461). Moreover, in this context, "all factual and legal issues must be resolved

in favor of the plaintiff."[10] *Pampillonia*, 138 F.3d at 461.

2. Analysis

Here, defendants argue that there is no possibility that plaintiffs can state a claim against UC. Specifically, defendants assert that plaintiffs' theory of liability as against UC — namely, what defendants label the "bulk supplier doctrine" — has been consistently rejected by New York courts and, thus, has no possibility of success in the Actions. (Alexander Defs.' Opp. Mem. at 7; Sherman Defs.' Opp. Mem. at 7.) For the following reasons, the Court rejects defendants' argument.

"It has long been the rule that a plaintiff may recover in strict products liability for a manufacturer's failure to warn of the risks and dangers associated with the use of its product," but that the "bulk supplier" doctrine cuts off the manufacturer's liability where "[the manufacturer] adequately warns [its] distributee of the risks and dangers associated with the use of its product." *Polimenti v. Minolta Corp.*, 653 N.Y.S.2d 429, 431 (N.Y. App. Div. 1997) (internal citations omitted); *see, e.g., Tuosto v. Philip Morris USA Inc.*, No. 05 Civ. 9384 (PKL), 2007 WL 2398507, at *14 (S.D.N.Y. Aug. 21, 2007) ("A manufacturer does have a 'duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known.'") (quoting *Kosmynka v. Polaris Indus. Inc.*, 462 F.3d 74, 80 (2d Cir. 2006)) (additional internal quotation marks and citation omitted). However, it is clear that the bulk supplier doctrine is applied by courts, at the earliest, at the summary judgment stage and *not* at the motion to dismiss stage nor, as defendants seek to do here, upon a motion to remand. Indeed, there does not appear to be a single reported case in New York state or federal court wherein the court dismissed the plaintiff's claims on the basis of the bulk supplier doctrine at any point *prior* to a motion for summary judgment. *See, e.g., Polimenti*, 653 N.Y.S.2d at 431*; Oeffler v. Miles, Inc.*, 642 N.Y.S.2d 761, 767 (N.Y. Sup. Ct. 1996) (declining to grant summary judgment on the basis of the bulk supplier doctrine "particularly at this early stage where substantial discovery is outstanding"); *cf. Rivers v. AT & T Tech., Inc.*, 554 N.Y.S.2d 401, 404 (N.Y. Sup. Ct. 1990) (granting summary judgment to the defendant manufacturer where, following discovery, the defendant had "set forth persuasive evidence that it acted reasonably and appropriately in its role as a bulk supplier by adequately warning [users of its product] . . .").

Furthermore, defendants have failed to cite *any* case in which a court has dismissed a claim on the basis of the bulk supplier doctrine prior to the completion of discovery. Instead, defendants cite one federal district

---

[10] The Court also notes that, in analyzing the fraudulent joinder issue, it is permitted to look beyond the pleadings to resolve this jurisdictional question. *See Building and Const. Trades Council of Buffalo, N.Y. and Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 150 (2d Cir. 2006) ("Although this ruling required the district court to look outside the pleadings, a court has discretion to do so when determining whether it has subject matter jurisdiction.") (citing *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002)); *see also Pampillonia*, 138 F.3d at 461-62 (looking to affidavits to determine if plaintiff's complaint alleged a sufficient factual foundation to support claims); *Consol. Fen-Phen Cases*, No. 03 Civ. 3081 (JG), 2003 WL 22682440, at *3 (E.D.N.Y. Nov. 12, 2003) (stating that, in analyzing fraudulent joinder, "courts can look beyond the pleadings to determine if the pleadings can state a cause of action"); *Arseneault*, 2002 WL 472256, at *6 (considering deposition testimony and other material outside pleadings in order to resolve claim of fraudulent joinder).

7

court case on this issue, *In re Joint Eastern and Southern District Asbestos Litigation*, 827 F. Supp. 1014, 1055 (S.D.N.Y. 1993), *rev'd in part on other grounds by* 52 F.3d 1124 (2d Cir. 1995), wherein the district court, applying New York law, granted defendants' *post-verdict* motion for a new trial on the ground that there was insufficient evidence to hold the bulk supplier defendant liable for plaintiffs' asbestos-related injuries, and specifically noted that the "latent quality of the defects in asbestos products makes the issues of the sophisticated intermediary and intervening negligence *questions of fact for the jury* to decide." (emphasis added); (*see* Sherman Defs.' Opp. Mem. at 6-7; Alexander Defs.' Opp. Mem. at 7.). In addition, defendants cite two state court cases — *Polimenti*, 653 N.Y.S.2d at 431, and *Rivers*, 554 N.Y.S.2d at 404 — wherein the respective state courts addressed the bulk supplier doctrine upon a motion for summary judgment. (*See* Sherman Defs.' Opp. Mem. at 6; Alexander Defs.' Opp. Mem. at 7.) Notably, in *Polimenti*, the Appellate Division affirmed the trial court's denial of the defendant manufacturer's motion for summary judgment on the basis of the bulk supplier doctrine, finding "that it cannot be said, as a matter of law, that the warnings that were given to [the distributees] by [the defendant manufacturer] were adequate. It is axiomatic that in all but the most unusual circumstances, the adequacy of a warning is a question of fact." 653 N.Y.S.2d at 431 (citing *Cooley v. Carter-Wallace Inc.*, 478 N.Y.S.2d 375, 376 (N.Y. App. Div. 1984).

Here, it is beyond doubt that the question of whether or not the record ultimately favors application of the bulk supplier doctrine to preclude UC's liability is irrelevant to the issue before this Court — namely, whether UC was fraudulently joined in the Actions. Indeed, defendants seek to have this Court improperly review the merits of plaintiffs' claims against UC upon consideration of a motion to remand. For this Court to conduct such an inquiry would run counter to the well-settled standard for reviewing a fraudulent joinder claim in opposition to a motion to remand, which provides that "[t]he strength of plaintiffs' case . . . is not relevant'" to resolution of such a motion. *Dexter*, 2003 WL 22725461, at *2 (quoting *Arseneault*, 2002 WL 472256, at *8). "Indeed, it is not even enough for [the defendants asserting fraudulent joinder] to show that Plaintiffs' cause of action against [the non-diverse defendant] would not survive a motion to dismiss." *Id.* (internal citation omitted); *see Stan Winston Creatures, Inc. v. Toys' "R" Us, Inc.*, 314 F. Supp. 2d 177, 182 (S.D.N.Y. 2003) ("A 'defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case.' ") (quoting 14B Wright, Miller & Cooper § 3721, at 331).

Rather, as noted *supra*, the sole issue before this Court is whether defendants have proffered clear and convincing evidence that "there is no possibility, based on the *pleadings*, that the plaintiff can state a cause of action against the non-diverse defendant." *Whitaker*, 261 F.3d at 207 (emphasis added). In conducting this analysis, district courts in this Circuit have uniformly found that, in the context of asbestos personal injury actions removed to federal court, the plaintiff's "broad claims" as against alleged manufacturers and distributors of asbestos-containing products are sufficient to withstand a fraudulent joinder motion. *See, e.g., Dexter v. A C & S Inc.*, No. 02 Civ. 6522 (RCC), 2003 WL 22725461, at *3 (S.D.N.Y. Nov. 18, 2003) ("Defendants rest their removal of the case, and their argument for fraudulent joinder, on Plaintiffs' failure to identify [the non-diverse defendants'] asbestos-containing products to which [one of the plaintiffs] was

8

exposed. Such an argument does not meet the [fraudulent joinder] standard articulated in *Pampillonia*."); *Arseneault*, 2002 WL 472256, at *8 ("The fact that testimony cannot be assembled by plaintiffs to place [one of the plaintiffs] at a work site at which [the defendants' asbestos] products were present does not demonstrate that he was not affected by such products."); *Vasura*, 84 F. Supp. 2d at 539 (rejecting the defendants' fraudulent joinder argument where "[t]he complaint broadly alleges that all of the defendants, including [the non-diverse defendant], 'produced, manufactured, specified, supplied, installed or distributed asbestos and/or asbestos products . . . to which the plaintiff was exposed, or was a contractor at a location where the plaintiff was exposed to asbestos, or manufactured, sold and/or installed equipment which had asbestos components or specified such components for operation . . .'") (quoting from the Standard Complaint).

Similarly, in this case, defendants have failed to establish by clear and convincing evidence that plaintiffs have no possibility of stating a claim against UC. Instead, defendants have merely pointed to plaintiffs' alleged failures in their respective pleadings and deposition testimony to specifically identify UC as the source of the asbestos-containing products that allegedly caused plaintiffs' injuries. (*See* Alexander Removal Pet. ¶¶ 16-18; Sherman Removal Pet. ¶¶ 16-19.) However, in accord with the authorities cited *supra* and the high burden for establishing fraudulent joinder, the Court finds that plaintiffs' allegations — that their respective injuries were "proximately caused by the defendants' negligent actions in that . . . they negligently designed, processed, manufactured, packaged, distributed, delivered and/or installed the asbestos-containing products to which the plaintiff was exposed . . ." — are more than adequate to withstand defendants' assertion of fraudulent joinder.[11] (Std. Compl. ¶ 172.)

Therefore, defendants' fraudulent joinder claim must fail because they have failed to establish by clear and convincing evidence that there is no possibility that the pleadings in the Actions can state a claim against UC. Accordingly, the Court finds that defendants have failed to establish that this Court has jurisdiction over the action and, thus, grants plaintiff's motion to remand. *Lupo*, 28 F.3d at 274.

### C. Rule of Unanimity

Alexander also argues that the Alexander Action should be remanded on the ground that one of the defendants in that action, International Truck and Engine Corporation ("ITEC"), failed to consent to its removal. (Alexander Pl.'s Mem. at 4.) The Alexander defendants' removal petition expressly concedes that ITEC did not consent to removal of the action.[12] (Alexander Removal

---

[11] The Court notes that, in response to defendants' fraudulent joinder argument, plaintiffs have submitted circumstantial evidence that purportedly demonstrates the strength of plaintiffs' claims against UC, including (1) shipping records of UC indicating that it shipped thousands of pounds of asbestos fibers to Chrysler (Riegel Aff. Ex. 2); (2) interrogatory responses from Chrysler indicating that it manufactured automobile brake parts containing asbestos fibers (*id.* Ex. 3); and (3) portions of deposition testimony by plaintiffs Alexander and Moses Sherman from which it purportedly can be inferred that they used such products during their work as automobile mechanics (*Id.* Ex. 1). Because defendants' fraudulent joinder argument must fail for the reasons discussed *supra*, the Court declines to evaluate the strength of plaintiffs' evidence in support of their claims against UC.

[12] Specifically, the removal petition notes the consent of "[a]ll remaining properly joined defendants, with one exception" — ITEC — and attaches as an exhibit a consent to removal signed by representatives for all

9

Pet. ¶ 19 & n.2; *id.* Ex. H.) Nevertheless, the Alexander defendants argue that removal was proper because ITEC "never affirmatively objected to the removal." (Alexander Defs.' Opp. Mem. at 4.)

"There is general agreement among the courts that '[a]ll the defendants must join in seeking removal' from state court." *Dunlop v. City of New York*, No. 06 Civ. 433 (KMK), 2006 WL 2853972, at *2 (S.D.N.Y. Oct. 3, 2006) (citing *Bradford v. Harding*, 284 F.2d 307, 309 (2d Cir. 1960)). "This requirement is known as the rule of unanimity." *Id.* (citing *Smith v. Kinkead*, No. 03 Civ. 10283 (RWS), 2004 WL 728542, at *2 (S.D.N.Y. Apr. 5, 2004)); *see Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 383 (S.D.N.Y. 2006) ("Although there is no statutory requirement that all defendants either must join the petition for removal or consent to removal, courts have consistently interpreted 28 U.S.C. § 1446 as requiring that all defendants consent to removal within the statutory thirty-day period, a requirement known as the 'rule of unanimity'"). There are exceptions to this rule for defendants who have not been served, unknown defendants, and fraudulently joined defendants. *See, e.g., Varela v. Flintlock Constr., Inc.*, 148 F. Supp. 2d 297, 300 (S.D.N.Y. 2001). It is undisputed that none of these exceptions apply in this case.

Here, it is clear that ITEC's non-consent to removal runs afoul of the requirement that all defendants "'must join in seeking removal.'" *Dunlop*, 2006 WL 2853972, at *2 (quoting *Bradford*, 284 F.2d at 309). Indeed, in order to effect removal of an action, the rule of unanimity requires "'some timely filed

---

defendants *other than* ITEC. (Alexander Removal Pet. ¶ 19 & n.2; *id.* Ex. H.)

written indication from each defendant . . . that it has actually consented to [removal of the action].'" *Codapro Corp. v. Wilson*, 997 F. Supp. 322, 325 (E.D.N.Y. 1998) (quoting *Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of North Am.*, 841 F.2d 1254, 1262 n. 11 (5th Cir. 1988) (collecting cases). The removal petition itself states that there is no such indication of ITEC's consent in this case. (*See* Alexander Removal Pet. ¶ 19 & n.2; *id.* Ex. H.) Accordingly, because ITEC did not join in the removal of the Alexander Action, the removal was procedurally defective and, thus, the Court grants plaintiff's motion to remand the Alexander Action on this additional ground.

D. Attorneys' Fees

Finally, plaintiffs seek an award of costs and actual expenses, including attorneys' fees, incurred as a result of the removal of the Actions. Section 1447(c) provides that a district court may, in its discretion, "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. 1447(c); *see Morgan Guaranty Trust Co. of New York v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992) ("The statute as a whole . . . affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees."). The statute does not require the party seeking costs and fees to demonstrate that the removing party acted in bad faith. *Id.* at 923-24. Rather, the Supreme Court has set forth an objective reasonableness test for a request under Section 1447(c):

> [T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an

objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).[13]

With respect to the Sherman action, plaintiffs' application for costs and fees is denied. Because this Court's "lack of jurisdiction was [not] obvious from the face of the [removal] petition" filed in the action, *Arseneault*, 2002 WL 472256, at *9 (internal quotation marks and citations omitted), the Court cannot conclude that defendants lacked an objectively reasonable basis for seeking removal.

However, with regard to the Alexander Action, the Court finds that defendants lacked an objectively reasonable basis to remove the action, where the removal petition itself noted that one of the defendants, ITEC, had not joined in seeking removal. Thus, it is beyond doubt that the removal of the Alexander Action contradicted the well-settled principle that "all named [defendants] over whom the state court acquired jurisdiction must join in the removal petition for removal to be proper." *Codapro*, 997 F. Supp. at 325 (collecting cases); *see Bradford*, 284 F.2d at 309. Having reviewed the record in this case, the Court finds that it was objectively unreasonable for the removing defendants in the Alexander Action to seek removal where they were aware that ITEC had not consented to removal but nevertheless disregarded the clearly applicable bar against removal in such a situation. *See Shamoun v. Peerless Importers, Inc.*, No. 03 Civ. 2003 WL 21781954, *4 (E.D.N.Y. Aug 01, 2003) (NO. 03 CV 1227 (NG) (awarding attorneys' fees where "the issues presented . . . as a basis for removal jurisdiction are not novel" and the "impropriety of the removal [was] apparent"); *Greenidge v. Mundo Shipping Corp.*, 60 F. Supp. 2d 10, 12 (E.D.N.Y. 1999) (awarding attorneys' fees where the "impropriety of the removal should have been clear"); *see also Allen v. Monsanto Co.*, 396 F. Supp. 2d 728, 734 (S.D.W.Va. 2005) (ordering attorneys' fees where the "issue" relating to the procedural defects in removal arising from the removing defendants' "failure to obtain [another defendant's] consent for removal" was "relatively clear and easily resolved against the Defendants").

Accordingly, within twenty-one days of the date of this Order, plaintiffs in the Alexander Action shall submit appropriate affidavits and records regarding the costs and any actual expenses, including attorneys' fees, incurred as a result of the removal of the Alexander Action. Thereafter, within ten business days, defendants shall submit their opposition to plaintiffs' submissions. Plaintiffs may submit a reply, if any, within

---

[13] With regard to the purpose of Section 1447(c), the Supreme Court observed:

> The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Martin*, 546 U.S. at 140.

11

incurred as a result of the removal of the Alexander Action. Thereafter, within ten business days, defendants shall submit their opposition to plaintiffs' submissions. Plaintiffs may submit a reply, if any, within three days of the filing of defendants' opposition.

### IV. CONCLUSION

For the foregoing reasons, plaintiffs' respective motions to remand the Sherman Action and the Alexander Action are GRANTED. The Actions are hereby REMANDED to the Supreme Court of the State of New York, County of New York. The Shermans' motion for costs and fees pursuant to Section 1447(c) is DENIED. Alexander's motion for costs and fees pursuant to Section 1447(c) is GRANTED.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: November 30, 2007
New York, NY

\* \* \*

Plaintiffs Moses and Leola Sherman and John Alexander are represented by Stephen Jeffrey Riegel, Esq., Weitz and Luxenburg, P.C., 180 Maiden Lane, New York, New York 10038-4925. Defendants Ford and GM are represented by Jay Allen Rappaport, Esq., Aaronson Rappaport Feinstein & Deutsch, LLP, 757 Third Avenue, New York, New York 10017.