UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

N⁰ 07 Civ. 6441 (RJS)

---

JOHN ALEXANDER,

Plaintiff,

VERSUS

AMCHEM PRODUCTS, INC., *ET AL.*,

Defendants.

---

MEMORANDUM AND ORDER
April___, 2008

---

RICHARD J. SULLIVAN, District Judge:

On November 11, 2007, this Court remanded the above-entitled action as well as a related action, *Sherman v. A.J. Pegno Construction, et al.*, No. 07 Civ. 6433, to the Supreme Court of the State of New York, New York County.[1] (Nov. 11, 2007 Order at 12.) The Court also granted plaintiff John Alexander's motion pursuant to 28 U.S.C. § 1447(c) for costs and attorney's fees incurred as a result of the removal of the *Alexander* action, and directed the parties to submit additional briefing regarding the amount of fees to be awarded to plaintiff's counsel.[2] (*Id.* at 10-11.) For the following reasons, the Court directs defendants to pay attorney's fees in the amount of $6630.

I. BACKGROUND

Plaintiff alleges that he incurred $18,900.00 in attorney's fees in litigating the motion to remand this action to state court. (Riegel Aff. ¶ 12.) According to plaintiff's counsel ("Counsel"), his firm, Weitz & Luxenberg, P.C. (the "Firm"), — a "plaintiffs-side product liability law firm" — does not

---

[1] Hereinafter, the Court refers to these respective actions as the "*Alexander* action" and the "*Sherman* action."

[2] The Court denied the *Sherman* plaintiffs' motion for costs and fees incurred as a result of the removal of the *Sherman* action. (Nov. 11, 2008 Order at 10-11.)

bill on an hourly basis. (*Id.* ¶ 6.) Nevertheless, Counsel asserts that, based on his "experience and skills" and his "relative seniority and supervisory position at [his] firm," a "reasonable estimate" of the value of his services on an hourly basis is $600 per hour. (*Id.*)

Counsel has also submitted copies of his "desk calendar," wherein he made "contemporaneous notations" of the amount of time he devoted each day to the Sherman and Alexander actions, collectively. (*See id.* ¶ 8, Ex. 1.) Most of the entries on Counsel's calendar fail to indicate the particular tasks performed on any given day or to delineate the amount of time devoted to the respective actions. Thus, because the times recorded in many of the entries on Counsel's desk calendar relate to work performed on *both* the Sherman and Alexander actions, plaintiff now seeks fees for his work in the Alexander action based on the following calculation: *half* of the time noted in Counsel's diary, multiplied by the rate of $600 per hour.

In a sworn affirmation submitted in support of the fee application, Counsel offers the following summary of his time expended on the remand motion in this matter:

> On July 23, 24, 25, 26, 27, 30, and 31, 2007, Counsel spent 19.5 hours "researching, drafting, preparing, and filing and serving" the moving papers in this case, which were filed on July 31, 2007. (*Id.* ¶ 8.)

> On August 13, 2007, Counsel spent two hours "writing and serving a letter" on the Honorable George B. Daniels, District Judge, to whom the Alexander Action had previously been assigned.[3] (*Id.* ¶ 9.)

> On September 19, 2007, Counsel spent one hour "preparing for and attending the pre-motion conference" held that day regarding the Sherman and Alexander actions. (*Id.* ¶ 10.)

> On November 8, 9, and 12, 2007, Counsel spent nine hours "researching, writing, and filing and serving" plaintiffs' reply letter brief. (*Id.* ¶ 11.)

Thus, Counsel asserts that he devoted 31.5 total hours of work to the Alexander action, for a total of $18,900.00 in attorney's fees.

Counsel recites his professional background and experience as follows: He has served as head of the Appellate Unit at the Firm for the past five years. (*Id.* ¶ 3.) During that time, he has "engaged in appeals" before state appellate courts and the Court of Appeals of New York, as well as federal district courts in New York and the Court of Appeals for the Second Circuit. (*Id.* ¶ 3.) Counsel previously served as an Assistant United States Attorney in the Eastern District of New York from 1989 to 2001, and as a law clerk in the District of New Jersey from 1984 to 1986. (*Id.* ¶ 4.) Counsel graduated from Stanford University Law School in 1984. (*Id.*)

## II. LEGAL STANDARD

"'The calculation of reasonable attorneys fees is a factual issue whose resolution is committed to the discretion of the district

---

[3] The Alexander action was reassigned to the undersigned on September 28, 2007.

court.'" *Cruz v. Local Union No. 3 of Int'l Brotherhood of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993)).

Courts in this Circuit determine the "presumptively reasonable fee" by first determining "[t]he reasonable hourly rate" that "a paying client would be willing to pay," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117 (2d Cir. 2007),[4] and then multiplying that figure by the "reasonable number of hours expended" by counsel, *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 (2d Cir. 2007). In determining the reasonable hourly rate, the district court should consider, *inter alia*, the following factors:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

*Arbor Hill*, 493 F.3d at 112.[5] Moreover, in fixing this rate, district courts also consider the prevailing rates in the community for similar services by lawyers with comparable skill, experience, and reputation. *See Arbor Hill*, 493 F.3d at 119 ("We presume . . . that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally."); *see also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). In determining the prevailing rates in the relevant community, the court "may rely upon its own knowledge of private firm hourly rates . . . ." *Wise v. Kelly*, No. 05 Civ. 5442

---

[4] The Honorable Sandra Day O'Connor, Associate Justice (Retired) of the United States Supreme Court, was sitting on the panel by designation.

[5] The Second Circuit also suggests that district courts consider the twelve factors set forth by the Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90-91 (1989). *See Arbor Hill*, 493 F.3d at 117-18. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

(SAS) (THK), 2008 WL 482399 at * (S.D.N.Y. Feb. 21, 2008).

Additionally, "[i]n calculating the number of reasonable hours, the court looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotation marks and citation omitted). A fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "If the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation . . . ." *Geirlinger*, 160 F.3d at 876 (internal quotation marks and citation omitted).

### III. DISCUSSION

#### A. Reasonable Hourly Rate

Counsel asserts that, based on his "experience and skills" and his supervisory position at the Firm, a "reasonable estimate" of the value of his services is an hourly rate of $600. (Riegel Decl. ¶ 6.) Defendants argue that this estimate "is completely unrealistic" and that "[t]here is nothing in [Counsel's submissions] even remotely suggesting how they came to the conclusion that $600 per hour is 'reasonable' . . . ." (Defs.' Opp. ¶¶ 3-4.) Thus, defendants assert that Counsel's hourly rate be capped at the $255 hourly rate charged by defense counsel. (*Id.* ¶ 5.)

The Court finds that the hourly rate proffered by Counsel is unreasonably high. Other than Counsel's conclusory assertion that a $600 rate is "reasonable," he has failed to submit *any* case authority or other evidence in support of the reasonableness of the proffered rate. Thus, Counsel's submissions are of little help to the "case-specific inquiry" that must be conducted by this Court regarding "the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005); *see Moreno v. Empire City Subway Co.*, No. 05 Civ. 7768 (LMM) (HBP), 2008 WL 793605 at *7 (S.D.N.Y. March 26, 2008) (finding that, where the fee applicant "has submitted no evidence of the prevailing market rate for attorneys of like skill litigating cases similar to plaintiff's, i.e. negligence and personal injury cases . . . it is within [the court's] discretion to determine the reasonable hourly rate at which plaintiff's counsel should be compensated based on [the court's] familiarity with plaintiff's case and the prevailing rates in the Southern District.).

#### 1. The *Arbor Hill* Factors

The proffered rate is unreasonable in light of the factors identified in *Arbor Hill*. First, the remand of this case presented no issues of significant "complexity and difficulty." *Arbor Hill*, 493 F.3d at 112. As noted in the Remand order, "the removal of the Alexander Action contradicted the well-settled principle that 'all named [defendants] over whom the state court acquired jurisdiction must join in the removal petition for removal to be proper.'" *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 331 (S.D.N.Y. 2007) (internal citation omitted). This issue did not present a question of significant complexity — defendants' *conceded* that their removal of the Alexander Action ran afoul of the "rule of unanimity," and, therefore, was

procedurally improper. *See id.* at 330-31. The remand motion also concerned a fraudulent joinder issue that presented a relatively straightforward question: whether defendants had satisfied the exacting burden imposed upon a party seeking to invoke the fraudulent joinder doctrine. *See id.* at 328 (finding that it was "beyond doubt" that defendants had failed to discharge their burden of showing fraudulent joinder by "clear and convincing evidence").

Second, it does not appear that significant resources were "required" in order to effectively litigate plaintiffs' remand motion. *Arbor Hill*, 493 F.3d at 112. Counsel submitted a twelve-page opening brief and a three-page letter reply brief in support of the motion. In that relatively limited number of pages, Counsel presented a number of well-reasoned and carefully organized arguments in favor of plaintiffs' position, which ultimately proved to be persuasive. Counsel also attended a one-hour conference before the undersigned regarding the Alexander and Sherman actions.

As to "the resources being marshaled on the other side," defendants devoted fewer resources than plaintiff to litigating the remand motion. As plaintiff correctly noted in his reply brief in the Alexander Action, defendants' opposition brief in the Alexander action — which was defendants' *only* submission relating to the remand motion — consisted principally of "a rehash of papers" previously filed in the Sherman action; indeed, defendants' opposition briefs in the respective actions were nearly identical. (*See* Pl.'s Reply Br. at 1; Sherman Defs.' Opp.; Alexander Defs.' Opp.)

Defendants filed their opposition brief in the Sherman action on October 9, 2007, and plaintiff filed his reply in that action on October 9, 2007. Defendants then filed a nearly identical opposition brief in the Alexander action on November 2, 2007, and plaintiff filed his reply in that action on November 12, 2007. Thus, at the time Counsel submitted the reply brief in the Alexander action, he had already reviewed and prepared a response to defendants' substantially identical opposition brief in the Sherman action. Therefore, due to the minimal additional resources being marshaled by defendants in the Alexander actions, Counsel needed to devote relatively fewer resources to briefing the remand motion than he would have in the more common brief-opposition-reply scenario.

Third, it appears that the "timing demands" of this case were not onerous. *Arbor Hill*, 493 F.3d at 112. Plaintiffs filed their initial moving papers on July 31, 2007, while this action was assigned to another judge. Thereafter, briefing on this motion was not completed until November 12, 2007, soon after the case was re-assigned to the undersigned. Thus, the briefing on the remand motion took over three months to complete — far from a demanding briefing schedule.

Fourth, as to the "results obtained" and the "ability of the attorney[]" seeking fees, *Johnson*, 488 F.2d at 718, Counsel obtained the desired result for his clients in this action; moreover, in doing so, Counsel demonstrated an in-depth knowledge of the facts of this case and the relevant legal principles at issue, as well as the ability to craft persuasive arguments in support of his clients' position.

In light of these considerations, the Court finds that plaintiff has failed to demonstrate that litigating the remand motion in this action presented an especially complex or onerous task for Counsel that would merit an hourly rate far exceeding the "market rate," which the Court addresses below.

## 2. Prevailing Market Rate

The proffered hourly rate far exceeds comparable rates awarded to fee applicants in similar cases in this District. Indeed, having conducted a review of the relevant case law, the Court has been unable to find a case involving similar circumstances — namely, an improper removal of two related personal injury cases and the award of fees incurred in obtaining a remand of one of those cases — wherein the court applied an hourly rate even approaching the figure suggested by Counsel. Rather, given that the relevant legal market at issue here is highly qualified and experienced attorneys at small to mid-size law firms in this District, the Court finds that the proffered hourly rate exceeds the prevailing market rate by approximately $200.[6] *See, e.g., Moreno*, 2008 WL 793605 at *7 (reducing proffered hourly rate from $400 to $275 for an experienced attorney litigating "negligence and personal injury cases"); *Garcia v. Yonkers School Dist.*, 499 F. Supp. 2d 421, 426 (S.D.N.Y. 2007) (applying hourly rate of $350 per hour for "an attorney who is highly qualified and experienced in civil rights litigation"); *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (applying rates of $425 for senior partner, $350 for junior partner, and $300 for associates of small firm in ERISA case); *Martinez v. Port Auth. Of New York & New Jersey*, No. 01 Civ. 721 (PKC), 2005 WL 2143333 at *26 (S.D.N.Y. Sept. 2, 2005) (applying rates of $400 per hour for partner and $325 per hour for co-counsel in civil rights case); *Kuper v. Empire Blue Cross & Blue Shield*, No. 99 Civ. 1190 (JSG) (MHD), 2003 WL 23350111, at *9-10 (S.D.N.Y. Dec. 18, 2003) (applying rate of $425 per hour for lead attorney of small firm in civil rights case); *New York State Nat'l Org. For Women v. Pataki*, No. 93 Civ. 7146 (RLC), 2003 WL 20006608, at *2 (S.D.N.Y. Apr. 20, 2003) (applying rates of $430 per hour and $400 per hour to experienced civil rights litigators from small firm); *Davis v. New York City Housing Auth.*, No. 90 Civ. 628(RWS), 2002 WL 31748586, at *2-3 (S.D.N.Y. Dec. 6, 2002) ($375 per hour to attorney with fifteen years of experience); *Marisol A. v. Giuliani*, 111 F. Supp. 2d 381, 387 (S.D.N.Y. 2000) (applying rates in civil rights case of $350 for attorneys with more than fifteen years of experience, $300 for attorneys with ten to fifteen years of experience, $230-250 for attorneys with seven to nine years of experience).

Therefore, with the above-cited considerations and rates as reference, and acknowledging that a plaintiffs' side firm may be entitled to some additional level of compensation based on the risk inherent in contingent-fee billing, the Court finds that

---

[6] The Court does not look to cases involving fees awarded to firms identical to that of Counsel because so few cases in this District, if any, address the hourly rates paid to plaintiffs'-side personal injury firms, which typically collect fees on a contingency basis. Rather, the Court views experienced civil rights attorneys in small to mid-size firms as a category of attorneys reasonably analogous to Counsel, an experienced attorney holding a senior position in a small to mid-size firm specializing in personal injury and mass tort cases. (The Firm's website indicates that it is currently comprised of sixty attorneys. *See* Weitz & Luxenberg P.C., http://www.weitzlux.com/lawfirm_585.html (last visited March 31, 2008).)

Counsel should be compensated for his work on the remand motion at the rate of $400 per hour.

### B. Reasonable Hours Expended

"The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Here, Counsel seeks fees for 19.5 hours of work expended on the Alexander action. In support of this figure, Counsel relies on his contemporaneous calendar entries and his sworn submissions to this Court indicating that half of the time listed in the entries was, in fact, expended on the remand motion in the Alexander action. Defendants argue that the proffered hours expended are "exaggerated." (Defs.' Opp. ¶ 7.) For the following reasons, the Court finds that Counsel has failed to establish that the proffered number of hours were reasonably expended, and therefore excludes from its fee calculation what appear to be unnecessary hours expended by Counsel in this matter.

#### 1. Vague Entries

As an initial matter, the Court finds that the time records submitted by Counsel, when considered in the context of this case, are not so vague as to justify a reduction in fees on that basis alone. "[C]ontemporaneous time records are a prerequisite for attorney's fees in this Circuit. . . . [A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1147-48; *see, e.g.*, *Wilder v. Bernstein*, 975 F. Supp. 276, 286 (S.D.N.Y. 1997). A number of district courts have found that an applicant's failure to submit such records provides, by itself, grounds to reduce or to deny a fee award, correctly noting that the absence of such details makes it nearly impossible for the court to assess the reasonableness of the time spent on each activity and the appropriate rate to apply. *See Williams v. New York City Hous. Auth.*, 975 F. Supp. 317, 327 (S.D.N.Y. 1997) ("Fee applicants should not 'lump' several services or tasks into one time sheet entry because it is then difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided. . . . 'It is not the court's job to decipher time entries and guess how much time each activity took . . . .'") (internal citation omitted); *accord Williamsburg Fair Housing Committee v. New York City Hous. Auth.*, No. 76 Civ. 2125 (RWS), 2005 WL 736146, at *9 (S.D.N.Y. March 31, 2005). However, the prevailing approach "where an attorney's time entries are vague" is for the court to "attempt to decipher them by reference to the 'context in which these entries occur . . . .'" *Bonnie & Company Fashions, Inc. v. Bankers Trust Co.*, 970 F. Supp. 333, 342 (S.D.N.Y. 1997) (quoting *Lenihan v. City of New York*, 640 F. Supp. 822, 826 (S.D.N.Y. 1986)).

Here, Counsel submits contemporaneous records from his desk calendar in support of the proffered amount of hours expended. Most of the entries on the desk calendar list solely the number of hours worked, and fail to indicate the case being worked on, the task being performed, or even if the hours related

to work on any *legal* matter. Specifically, seven of the eleven entries simply list a number of "hrs," or hours, and relay no other information. (*See* Riegel Decl., Ex. 1.) Nevertheless, because these entries appear on dates that closely precede filing deadlines for submissions and/or conference dates relating to plaintiffs' remand motion, the Court finds that, when considered in the context of this case, the entries are not so vague as to preclude the recovery of fees on the basis of vagueness alone.

### 2. Hours Expended

Courts routinely use percentage reductions "as a practical means of trimming fat from a fee application," *Carey*, 711 F.2d at 1146, at least where the proffered amount of hours are "'excessive, redundant, or otherwise unnecessary.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)); *see, e.g.*, *Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 64-65 (E.D.N.Y. 2003) (applying 10% reduction to excessive fee application). Here, the Court applies such a reduction on the ground that Counsel has failed to demonstrate the reasonableness of the proffered amount of hours expended in this matter. The Court first applies a percentage reduction to the time spent collectively on preparing the moving papers in this action and the August 2007 letter to Judge Daniels, and attending the September 2007 conference before the undersigned. The Court then reduces the proffered time spent on preparing the reply brief.

### a. The Moving Papers

Counsel seeks fees for half of the purported thirty-nine hours he spent, collectively, on preparing the moving papers in the Alexander and Sherman actions, which included two twelve page memoranda and two affirmations from Counsel. However, defendants assert that Counsel has "exaggerated" the hours devoted to preparing the moving papers, and, therefore, he should not be entitled to compensation for half of the proffered time. (Defs.' Opp. ¶ 7.) Specifically, according to defendants, Counsel should not have required thirty-nine hours to prepare the remand motions in the two actions, or nineteen and one-half hours to prepare the remand motion in the instant action, at least given Counsel's "level of experience" and the close similarity of the moving papers filed in the respective actions. (*Id.*) The Court agrees.

Counsel fails to offer any explanation for why an experienced and highly qualified litigator would require nineteen and one–half hours to prepare the moving papers in the this action. Indeed, although the moving papers ably and persuasively stated plaintiff's position, they did not address particularly complex or detailed issues of law or fact. *See supra* Part III.A.1. Moreover, upon review of the papers filed in both the Sherman and Alexander actions, it is clear that most of the substantive portions of the opening briefs in the two actions were identical.[7] Therefore, while preparing the briefs, Counsel presumably had the time-saving benefit of directly copying much of the text from one brief and pasting it in the other.

---

[7] Specifically, the opening briefs in both actions contain nearly identical sections addressing the fraudulent joinder and attorney's fees issue; pages five through ten of the opening brief in the Alexander action are practically indistinguishable — save for a few sentences — from pages four through nine of the opening brief in the Sherman action.

8

In addition, Counsel fails to offer any explanation as to why the affirmation included with the moving papers in this action took any significant amount of time to prepare. For instance, the two-page affirmation in this action is signed by Counsel and merely lists the four exhibits attached thereto, which included several pages from the transcript of plaintiff's deposition, shipping records from defendants, copies of one defendant's interrogatory responses, and a state court decision cited in plaintiff's opening brief. (*See* Riegel Aff. dated July 30, 2007.) Thus, preparation of the affirmation and the attached exhibits appears to have required little more than selecting and photocopying previously prepared materials, and Counsel fails to offer any basis to conclude otherwise. Accordingly, having considered the circumstances of this case, the issues addressed in the remand motion, and Counsel's fee application, the Court finds no basis to conclude that nineteen and one-half hours was a reasonable amount of time to spend on preparing the moving papers in this action.

### b. The August 13, 2007 Letter and the September 19, 2007 Conference

Counsel has similarly failed to demonstrate the reasonableness of the proffered time spent writing the August 13, 2007, letter to Judge Daniels, and "preparing for and attending" the September 19, 2007, conference before the undersigned concerning both the Alexander and Sherman actions. (*See* Riegle Aff. ¶¶ 9-10.) As to the August 13 letter, it contains two paragraphs of text, wherein Counsel briefly recites the procedural history of the Alexander action and requests an "expedited briefing schedule" regarding plaintiff's outstanding remand motion; in the letter, Counsel does not cite any legal authority and there appears to have been no need for Counsel to conduct legal or factual research in preparing the letter. (*See* Pl.'s Aug. 13, 2007 Ltr.) As to the September 19 conference, it was scheduled in the Sherman action, and occurred prior to the reassignment of the instant action to the undersigned. During the conference, the parties and the Court devoted most of their time to setting a schedule in the Sherman action, and briefly addressed reassignment of the Alexander action to the undersigned. Thus, there is no basis for this Court to conclude that an additional hour of time spent on the Alexander action should be credited to Counsel on the basis of that conference.

Therefore, because Counsel has failed to demonstrate the reasonableness of the proffered amount of time spent on the tasks discussed above, the Court finds, on the basis of its knowledge of the instant case and the issues litigated in the remand motion, that the proffered amount of hours — other than the time spent on the reply brief — should be reduced by 20 percent.[8]

---

[8] A number of other courts have applied similar percentage reductions in cases where the fee applicant has failed to establish the reasonableness of the proffered number of hours expended. *See, e.g.*, *Kirsch*, 148 F.3d at 173 ("[W]e see no abuse of discretion in the adjustment of the rate to be paid for [the fee applicant's] time or as to the 20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records."); *Chernis v. Swarzman*, No. 05 Civ. 3377 (FM), 2007 WL 2230078 at *13 (S.D.N.Y. Aug. 2, 2007) ("[I]t is appropriate to reduce the time recoverable . . . by an additional twenty percent to ensure that the judgment entered in this case incorporates only the time that [the fee applicant] reasonably expended" in the action); *Local 5 New York*

9

### c. The Reply Brief

Finally, Counsel has failed to demonstrate the reasonableness of the amount of hours expended on the reply brief in this matter. Counsel asserts that he devoted nine hours to "researching, writing, and filing and serving" the three-page letter brief. (Riegel Decl. ¶ 11.) The Court finds this to be an unreasonable amount of time. The letter merely reiterates arguments previously made in plaintiffs' opening memorandum and briefly updates the Court on parallel proceedings before the Multi-District Litigation panel. (Pls.' Reply Br. at 1-3.) Again, Counsel fails to offer any explanation for why an experienced and highly qualified litigator would require nine hours to prepare a three-page letter brief that did little more than reiterate arguments previously presented to the Court.[9] Thus, in its discretion, and based on its knowledge of the instant case and the issues addressed in the reply brief, the Court reduces the proffered amount of hours spent on the reply brief from nine to three.

Accordingly, given the above-reductions in the proffered time spent on this case, the Court determines that Counsel is entitled to compensation for 21 hours of work on the remand motion in this case.[10]

---

*Retirement, Welfare & Training Funds v. Helmer-Cronin Const., Inc.*, No. 03 Civ. 748 (MDF), 2005 WL 3789085 at *5 (S.D.N.Y. Oct. 24, 2005) (applying twenty percent reduction in the proffered number of hours billed); *Anderson v. Rochester-Genesee Regional Transp. Auth.*, 388 F. Supp. 2d 159, 167 (W.D.N.Y. 2005) ("To reflect both the excessive hours claimed and the insufficiency of some of plaintiffs' attorneys' time records, the Court will reduce the hours claimed by 20% . . . ."); *cf. Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc.*, No. 07 Civ. 2005 (CPS), 2008 WL 552860, at *5 (E.D.N.Y. Feb. 27, 2008) (NO. CV-07-2005 (CPS)) (applying "an across the board reduction of fifteen percent").

[9] Although plaintiff fails to separately identify the time expended on the particular tasks of filing and serving the reply brief, there is no reasonable basis for this Court to conclude that such tasks, when considered along with the time expended on researching and writing, would have taken nine hours to complete. In any event, because block billing -- or, the practice of aggregating multiple tasks into one billing entry — "renders it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary,'" courts apply "percentage cuts" where, as here, there is a substantial amount of block billing in a fee request. *Molefi v. Oppenheimer Trust*, No. 03 Civ. 5631 (FB) (WP), 2007 WL 538547 at *7 (E.D.N.Y. 2007); *see Westchester Teamsters Local 456 Annuity Fund v. Fleet Nat'l Bank*, No. 02 Civ. 6664 (AKH), 2007 WL 548778 at *3 (S.D.N.Y. Feb 21, 2007); *see also Meriwether v. Coughlin*, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (reducing fee request by fifteen percent to account for certain time entries that were "too vague to adequately assess reasonableness").

[10] The amount of time was calculated as follows: 9 hours (the proffered time spent on the reply brief) subtracted from 31.5 hours (the total amount of proffered time) equals 22.5 hours (the proffered time spent on the opening brief, the August 2007 letter, and the September 2007 conference); 20 percent of 22.5 hours is 4.5 hours; subtracting 4.5 hours from 22.5 hours yields 18 hours. This figure plus the reduced amount of time spent on the reply brief — 3 hours — yields 21 hours.

10

IV. CONCLUSION

For the foregoing reasons, the Court reduces Counsel's proffered hourly rate from $600 to $400, and the proffered time spent on the remand motion from 31.5 hours to 21 hours. Multiplying these figures yields an award of attorney's fees in the amount of $8400.[11] That amount shall be paid by defendants to Counsel within thirty days of the date of this Order.

The Clerk of the Court shall terminate the motion docketed as document number 19.

SO ORDERED.

\* \* \*

Plaintiff is represented by Stephen Jeffrey Riegel, Esq., Weitz and Luxenburg, P.C., 180 Maiden Lane, New York, New York 10038. Defendants are represented by Jay Allen Rappaport, Esq., Aaronson Rappaport Feinstein & Deutsch, LLP, 757 Third Avenue New York, New York 10017.

RICHARD J. SULLIVAN
United States District Judge

Dated: April 2, 2008
       New York, New York

---

[11] The Court notes that, although "attorneys' fees for the preparation of the fee application are compensable," *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir. 1996) (citing *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979)). Counsel has not requested compensation for the time spent preparing the instant fee application. The Court has taken this fact into consideration in imposing the above reductions to the fee application.

11